Robert WHEELER, by his mother Lillie Maye Armstrong, as next friend, et al., Plaintiffs-Appellants,

v.

Albert GLASS, Director of the Department of Mental Health of the State of Illinois, et al., Defendants-Appellees.

No. 71–1677.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 19, 1972.

Decided Jan. 18, 1973.

Patrick T. Murphy, John D. Shullenberger, James M. DeZelar, Lewis A. Wenzell, Chicago, Ill., for plaintiffs-appellants.

William J. Scott, Atty. Gen., Warren K. Smoot, Jerome F. Goldberg, Joan M. Matlaw, Francis T. Crowe, Asst. Attys. Gen., Chicago, Ill., for defendants-appellees.

Before STEVENS and SPRECHER, Circuit Judges, and GORDON, District Judge.*

SPRECHER, Circuit Judge.

Robert Wheeler and Dennis Durfee, two mentally retarded youths institutionalized in the Children and Adolescent Unit at Elgin State Hospital, brought a class action pursuant to 42 U.S.C. § 1983 seeking declaratory, injunctive and pecuniary relief for alleged violations of their rights under the Eighth and Fourteenth Amendments to the United States Constitution. The complaint alleged that the defendants, by summarily binding the named plaintiffs to their beds in spread-eagle fashion in a public area of the hospital for 77½ hours after an alleged consensual homosexual act and forcing them to scrub walls for over ten consecutive hours on several occasions dressed in short, backless hospital gowns, subjected them to cruel and unusual punishment and denied them due process of law.

The district court dismissed the declaratory and injunctive aspects of the complaint following defendants' action in promulgating a revised rule on the use of restraints and the plaintiffs have not appealed from this dismissal. The court also dismissed the portion of plaintiffs' complaint which asked for monetary relief, stating that "plaintiffs merely differ from defendants in their view of what constitutes proper treatment for their maladies" and that while the "treatment" given plaintiffs might have been excessive in length of time, it did not constitute cruel and unusual punishment. The district judge found no violations of due process, holding that "being in the custody of various state departments charged with the treatment of youthful offenders does not entitle one to the full procedural safeguards of a criminal defendant." We believe that plaintiffs' complaint for pecuniary damages does state a cause of

* District Judge Myron L. Gordon of the Eastern District of Wisconsin is sitting by designation.

action under the Civil Rights Act and accordingly reverse.

## I.

■ Defendants raise two alleged defenses to this action which must be disposed of before reaching the merits on this appeal. The first alleged defense, that plaintiffs abandoned their damage claim in a pre-trial hearing in the district court, is, as in the companion case of Wesley v. Weaver, No. 71–1679 (7th Cir. January 1973), essentially frivolous. No record of any "abandonment" is before this court and the district court expressly passed on the claim for damages.

■ Defendants also broadly assert that as state officials they are immune from suit under 42 U.S.C. § 1983. No basis for absolute immunity is shown by the nature of the offices held by these defendants. They are neither judicial officers nor legislators. *See* Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L. Ed.2d 288 (1967). Defendant Glass is identified in the complaint as the Director of the Department of Mental Health in the state of Illinois and as such is alleged to be responsible for the acts of his employees. Defendant Shawwa was sued as the Acting Executive Director of the Children and Adolescent Unit at Elgin State Hospital, responsible for the disciplining of wards of the hospital. Defendant Vicioso is identified as the Clinical Director of the Children and Adolescent Unit at Elgin State Hospital. Defendant Bettenbach is the Acting Program Coordinator of the ward on which the two plaintiffs reside and is alleged to be directly responsible for the binding, restraining and public humiliation of the plaintiffs.

42 U.S.C. § 1983 provides that:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be sub-jected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

It is settled law that "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law is action taken 'under color of' state law." Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961); United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L. Ed. 1368 (1941). The officials here are alleged to have subjected the plaintiffs to the "deprivation of . . . rights, privileges, or immunities secured by the Constitution" of the United States by virtue of the power and authority which they possessed under color of state law. It is true that some or all of the defendants may be able to assert the defense of reasonableness and good faith,[1] *see* Briscoe v. Kusper, 435 F.2d 1046, 1058 (7th Cir. 1970), and McLaughlin v. Tilendis, 398 F.2d 287, 290 (7th Cir. 1968), but we conclude that the plaintiffs are entitled to the opportunity to prove that the defendants were responsible for the acts alleged to have occurred.

## II.

The plaintiffs predicate their complaint for damages for cruel and unusual punishment on the allegation that binding and spread-eagling the youths for 77½ hours in a "public" place physically harmed the two mentally retarded youths and caused them grave humiliation and mental distress. Complaints seeking relief for alleged violations of the Eighth Amendment have been increasing in recent years, but the perimeters of this Amendment are relatively undefined.

---

1. Plaintiffs' brief appears to concede that this defense will be available to defendant Glass, in that they state that upon learn-ing of the actions of his subordinates "Defendant Glass was shocked and immediately moved to rectify the situation."

■ The Supreme Court has considered the reach of the cruel and unusual punishment proscription in only a few cases, none of which involve conduct similar to that alleged here. Several basic principles do emerge from these cases however. The first is that "[t]he basic concept underlying the Eighth Amendment is nothing less than the dignity of man. While the State has the power to punish, the Amendment stands to assure that this power be exercised within the limits of civilized standards." Trop v. Dulles, 356 U.S. 86, 100, 78 S.Ct. 590, 597, 2 L.Ed.2d 630 (1958).[2] It has also been established that the concept of cruel and unusual punishment "is not fastened to the obsolete, but may acquire meaning as public opinion becomes enlightened by a humane justice." Weems v. United States, 217 U.S. 349, 378, 30 S.Ct. 544, 553, 54 L.Ed. 793 (1910), and that the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, supra, 356 U.S. at 101, 78 S.Ct. at 598. See also Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). A third principle is that "punishments which, by their excessive length or severity, are greatly disproportioned to the offenses charged" may not be inflicted. Weems v. United States, supra, 217 U.S. at 371, 30 S.Ct. at 551. See also Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962).

The federal courts of appeal have had more opportunity to consider application of this clause in situations involving particular conditions or punishments accorded inmates of penal institutions. In Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968), an opinion written by then Judge Blackmun, the Eighth Circuit held that the use of a strap as a disciplinary measure in Arkansas prisons constituted cruel and unusual punishment, stating that the use of a strap "irrespective of any precautionary conditions which may be imposed, offends contemporary concepts of decency and human dignity and precepts of civilization which we profess to possess . . ." The Second Circuit in Wright v. McMann, 387 F.2d 519 (2d Cir. 1967), held that a cause of action was stated under the Eighth Amendment by a prisoner alleging that he had been left in an unsanitary strip cell without clothing or basic elements of hygiene. Dismissals of prisoner civil rights actions in which similar contentions have been raised have also been held erroneous in Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), reversing 427 F.2d 71 (7th Cir. 1970); Martinez v. Mancusi, 443 F.2d 921 (2d Cir. 1970), cert. denied, 401 U.S. 983, 91 S.Ct. 1202, 28 L. Ed.2d 335 (1971); Sinclair v. Henderson, 435 F.2d 125 (5th Cir. 1970); and Allison v. Wilson, 434 F.2d 646 (9th Cir. 1970).

Other courts have been reluctant to find violations of the Eighth Amendment in various conditions of imprisonment, generally agreeing with the Second Circuit's statement in Sostre v. McGinnis, 442 F.2d 178, 191 (2d Cir. 1971), cert. denied, 404 U.S. 1049, 92 S. Ct. 719, 30 L.Ed.2d 740, cert. denied, Oswald v. Sostre, 405 U.S. 978, 92 S.Ct. 1190, 31 L.Ed.2d 254 (1972), that a federal court is ill-equipped "to command state officials to shun a policy that they have decided is suitable because to us the choice may seem unsound or personally repugnant." (Emphasis omitted.) See, e. g., Roberts v. Williams, 456 F.2d 819 (5th Cir.), cert. denied, 404 U.S. 866, 92 S.Ct. 83, 30 L.Ed.2d 110 (1971), as amended, 456 F.2d at 834 (5th Cir. 1972); Novak v. Beto, 453 F.2d 661 (5th Cir. 1971); Ford v. Board of Managers of New Jersey State Prison, 407 F.2d 937 (3rd Cir. 1969).

---

**2.** The principal opinion in that case also stated that while fines, imprisonment, and even execution may be imposed, "any technique outside the bounds of these traditional penalties is constitutionally suspect." Id. at 100, 78 S.Ct. at 598.

■■ We need not here enter the debate over when a federal court should interfere with the internal administration of state or federal prisons. Even under the tests suggested by the Second Circuit in Sostre v. McGinnis, *supra*, 442 F.2d at 191, including historical usage, practices in other jurisdictions, public opinion, and treatment "shocking to the conscience," we believe the plaintiffs have stated a claim for relief. In the first place, we are not dealing with convicted felons, but with mentally retarded youths incarcerated in the children's ward of a state hospital. Furthermore, we doubt that the treatment alleged— tying children to a bed in spread-eagle fashion, placing them in an area where others congregate for 77½ hours, and forcing them to scrub walls for long periods while barely clothed—can be described as either "usual," a practice commonly used in other places, or consistent with public opinion regarding "evolving standards of decency" in a humane society. We conclude that plaintiffs' allegations, if proved, do state punishment which is cruel and unusual under the Eighth Amendment, as applied to the states through the Fourteenth Amendment. Robinson v. California, *supra*.

### III.

■■ The district court also held that plaintiffs were not denied elemental procedural due process by the summary punishment inflicted upon them by the defendants, basing its decision on the fact that the plaintiffs were youths in the custody of various state officials charged with their treatment. Certainly, those entrusted with the care and training of youths must be permitted some latitude in disciplining their charges. This does not mean, however, that even constitutionally permissible punishment which imposes serious restraints upon an individual's liberty may be inflicted without some measure of due process. As the Second Circuit stated in Sostre v. McGinnis, *supra*, 442 F. 2d at 198, with regard to the punishment of a prison inmate:

> "If substantial deprivations are to be visited upon a prisoner, it is wise that such action should at least be premised on facts rationally determined. This is not a concept without meaning. In most cases it would probably be difficult to find an inquiry minimally fair and rational unless the prisoner were confronted with the accusation, informed of the evidence against him, . . . and afforded a reasonable opportunity to explain his actions."

*See also* Nolan v. Scafati, 306 F.Supp. 1, 3 (D.Mass.1969), reversed and remanded for a hearing on whether any assurances of elemental fairness had in fact been afforded in the disciplinary action which formed the basis for plaintiff's suit, 430 F.2d 548 (1st Cir. 1970).

■ Plaintiffs alleged that they were punished without the benefit of any hearing whatsoever. We have held that the punishment, if factually true, was constitutionally impermissible. In view of this holding, it is unnecessary for us to decide at this time questions which might arise in other contexts concerning permissible discipline without a hearing or the nature of a required hearing in particular circumstances. The punishment which plaintiffs claim to have received without any hearing necessarily stated a claim for relief for deprivation of liberty without due process.

Reversed and remanded.