**GENERAL ACCOUNTING OFFICE, Petitioner,**

v.

**GENERAL ACCOUNTING OFFICE PERSONNEL APPEALS BOARD, Respondent,**

**Morris L. Shaller, Intervenor.**

**No. 81–2401.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 26, 1982.

Opinion for the Court Jan. 18, 1983.

Decided May 20, 1983.

Howard S. Scher, Atty., Dept. of Justice, Washington, D.C., with whom Stanley S. Harris, U.S. Atty., and William Kanter, Atty., Dept. of Justice, Washington, D.C., were on the brief, for petitioner.

Robert H. Levan, Columbia, Md., for respondent.

Morris L. Shaller was on the brief for intervenor, pro se.

Before WRIGHT and EDWARDS, Circuit Judges, and BAZELON, Senior Circuit Judge.

Opinion for the Court PER CURIAM.

PER CURIAM:

On January 18, 1983, we remanded this case to the General Accounting Office Personnel Appeals Board ("PAB") for further consideration of the nature of intervenor Morris L. Shaller's appointment to the General Accounting Office ("GAO"). *See GAO v. GAO Personnel Appeals Board,* 698 F.2d 516, 534–36 (D.C.Cir.1983). The GAO has argued that Shaller could not appeal his termination to the PAB because he was a probationary employee at the time of his discharge. We remanded for further consideration of this issue, instructing the PAB to address several specific questions to guide our disposition. *See id.* at 536.

On remand, the PAB reaffirmed and elaborated on its earlier determination that Shaller was appointed noncompetitively by transfer and, thus, was entitled to appeal his discharge. We have carefully reviewed the PAB's opinion, appended hereto, and we adopt its reasoning. We express no view on the continuing precedential force of the Merit System Protection Board's decision in *Oulvey v. Veterans Administration,* MSPB Dock. No. SL07528010038, slip op. (July 29, 1981), as it applies *in the executive personnel system.* We note, however, that the PAB is not bound to follow MSPB decisions. And, on review, so long as the court is satisfied that

covery, while refusing to allow McKelway to depose Hartke's at that time.

a challenged PAB decision is consistent with applicable laws and regulations, and supported by substantial evidence, its decision must be affirmed. We are thoroughly satisfied that the attached PAB Decision on Remand satisfies these standards. We therefore affirm the decision of the PAB for the reasons set forth in their Decision on Remand.

*It is so ordered.*

UNITED STATES OF AMERICA

PERSONNEL APPEALS BOARD

GENERAL ACCOUNTING OFFICE

WASHINGTON, D.C.

MORRIS L. SHALLER, PETITIONER

v.

GENERAL ACCOUNTING OFFICE, RESPONDENT

Filed Apr. 18, 1983

DECISION ON REMAND

On January 18, 1983, the United States Court of Appeals for the District of Columbia Circuit remanded this case to the Personnel Appeals Board to consider certain questions related to the appointment and subsequent termination of Morris L. Shaller by the General Accounting Office (GAO). (*General Accounting Office v. General Accounting Office Personnel Appeals Board,* No. 81–2401.) In our prior decision (December 1, 1981), from which GAO appealed to the Court of Appeals, we held that GAO's summary termination of Shaller unlawfully denied him the pre-termination procedural protections to which non-probationary employees are entitled.

Before addressing the specific questions asked by the Court of Appeals, we briefly restate the facts and our analysis of the nature of Shaller's appointment and its effect on his probationary status.

On March 10, 1980, Shaller received a career-conditional appointment from the Defense Logistics Agency as a GS–5 Procurement Agent. His appointment was subject to a one-year probationary period, to end on March 9, 1981. Effective May 4, 1980, the GAO gave Shaller a career-conditional appointment as a GS–7 Management Analyst. On March 10, 1981, Shaller was notified that he would be terminated by GAO effective March 21, 1981. He was not afforded the pre-termination procedural protections given to non-probationary employees. Shaller contends that his time employed with the Defense Logistics Agency counts toward completion of any required probationary period, that the one-year required period was completed on March 9, 1981, and that it was therefore unlawful for GAO to terminate him summarily. GAO contends, on the other hand, that Shaller was required to begin a new one-year probationary period upon his appointment by GAO, beginning on May 4, 1980, and that his summary termination within that one-year period was lawful.

Resolution of this issue depends on whether Shaller was given a competitive appointment by GAO from a certificate of eligibles, in which case he would have had to serve a new one-year probationary period with GAO,[1] or whether he was non-competitively appointed by GAO by transfer from the Defense Logistics Agency, in which case he was entitled to credit toward completion of probation for the time served at his former agency.[2]

1. Paragraph 8–2.a., Subchapter 8, Chapter 315, Federal Personnel Manual (FPM), provides, in part:
   "An eligible given a career-conditional or career appointment by selection from a certificate of eligibles is required to serve a probationary period of one year. This applies not only to the first appointment of this kind, but to any subsequent career or career-conditional appointment by selection from a certificate of eligibles, regardless of whether the appointee had previously completed a probationary period."

2. Paragraph 8–2.e., Subchapter 8, Chapter 315, FPM, provides in part:
   "The . . . transfer of a career or career-conditional employee before he has completed pro-

The dispute as to the nature of Shaller's appointment arises because of the entries on his appointment forms. The Standard Form (SF) 52, "Request for Personnel Action," states, in part:

Block 12—Nature of Action—"131 Transfer Career Conditional"

Block 14—Civil Service or other legal authority—"GAO certificate: GAO–MA–80034 dted. 2/21/80."

The underlined portions are preprinted on the form. The portions in quotation marks were handwritten. The SF 50, which actually effects the personnel action, reflected the same information.

On first look, the entries appear contradictory. Block 12 seems to indicate that the appointment was by transfer, whereas Block 14 seems to indicate Shaller was appointed from a certificate of eligibles. Careful examination of the Federal Personnel Manual indicates, however, that these entries are not contradictory, and that the appointment was by transfer, as contended by Shaller.

FPM Supplement 296–31 deals with processing personnel actions, including the proper completion of SF 50's and SF 52's. Table 4 to FPM Supplement 296–31, "Specific Instructions for Filling In Nature of Action, Effective Date, Authority, and Remarks on Standard Form 50," describes the proper entries for both appointments from a certificate of eligibles and appointments by transfer. Table 4 provides, in relevant part:

| Method or basis for action | Authority | Personnel action code and nature of action |
|---|---|---|
| A. By SELECTION for career or career-conditional appointment: | | |
| 1. From a civil service register (FPM Ch. 315, Subch. 3) | CS register no. | 100 Career Appt or 500 Conv to Career Appt or 1001 Career-Cond Appt or 510 Conv to Career-Cond Appt |
| * * * * | | |
| B. By TRANSFER to a different agency of an employee already serving under a career or career-conditional appointment between competitive positions without break in service of a workday (see FPM Ch. 315, Subch. 5): | | |
| 1. Who is eligible for the position transferred to on the basis of having been reached on a civil service register. | Reg. 315.501— CS Certificate no., or OPM office, authority no., and date | 130 Transfer— Career or 131 Transfer— Career Cond [1] |

Shaller's SF 50 and SF 52 cited "131 Transfer Career Conditional" under "Nature of Actions" and set forth a particular "certificate number" under "authority."

bation is subject to a satisfactory completion of the probationary period in the new position. The employee does not have to serve a

*new* probationary period after ... transfer, regardless of a change in his line of work." (Emphasis in original.)

These entries are entirely consistent with and in conformity with paragraph B.1. of Table 4 for documenting an appointment by transfer. On the other hand, if GAO had given Shaller a career conditional appointment from a certificate, rather than an appointment by transfer, paragraph A.1. of Table 4 would prescribe the appropriate entries. On Shaller's SF 50 the "authority" would set forth a "certificate number" (as Shaller's does), but the "Nature of Action" would have read "101 Career Conditional Appointment" (which Shaller's does not).

The consequence of the entries as they appear on Shaller's SF 50 and SF 52 with respect to the appropriate probationary period is described in the FPM subchapter on probation. Apparently in recognition that entries referring to both transfer and a certificate number may cause confusion with respect to the proper probationary period, the end of paragraph 8–2.a., Subchapter 8, Chapter 315 provides:

> "(If an agency selects an employee from a certificate of eligibles, but appoints him/her noncompetitively by . . . transfer . . . the agency follows the instructions on probation in paragraph . . . e below . . .)"

Paragraph 8–2.e. (quoted in note 2) says that such transferees must complete only their original probationary period, not begin a new one.[3]

In summary, the FPM regulations clearly contemplate that individuals will be *appointed* by transfer and not have to begin a new probationary period, even though the individual was *selected* from a certificate of eligibles. Although GAO could have appointed Shaller from a certificate and thereby required him to serve a new one-year probationary period (see note 1), it did not. Instead it utilized the process of selecting him from a certificate of eligibles and appointing him by transfer. Shaller was required, therefore, to complete only

the one-year probationary period he began at the Defense Logistics Agency, which he did on March 9, 1981.

We now turn to the specific questions raised by the Court of Appeals.

"1. In *Oulvey,* the MSPB decided that an employee whose notice of personnel action showed both transfer and selection from a certificate of eligibles had been appointed competitively. Does the PAB adhere to its result in light of this decision? If so, is *Oulvey* distinguishable from the instant case?"

The relevant facts regarding the appointment in *Oulvey* do not differ from those in this case. We believe, however, that the MSPB failed to properly apply existing regulations and misinterpreted prior judicial precedent.

The MSPB decision and the total analysis in *Oulvey* may be captured in one closing paragraph of the decision:

> As appellant was a government employee who moved from a competitive position with one federal agency to a competitive position with another without a break in service of a workday, the personnel action was correctly identified as a "transfer." See FPM Supp. 296–31, July 9, 1979, at V–35. However, appellant was not appointed "non-competitively" by transfer as described at FPM Ch. 315, Subch. 8, para. 8–2a. He was selected from a certificate of eligibles and given a career-conditional appointment by means of transfer. The new appointment required a one-year probationary period, as was indicated on the SF 50. 5 C.F.R. 315.801(a)(1); FPM Ch. 315, Subch. 8, para. 8–2.

*Oulvey,* slip op. at 3. After concluding correctly that the nature of the action was properly identified as a "transfer," the MSPB arrives at the conclusion that "appellant was not appointed 'non-competitively' by transfer . . ." There is no explanation for this conclusion, no precedent offered to support it, and no discussion as to why the

---

**3.** See also paragraph d of Appendix A to FPM Chapter 315: *"Effect of personnel actions during probationary period.* (1) *Transfer.* Service

following transfer during an employee's probationary period is counted toward completion of the probationary period."

MSPB chose to ignore 5 C.F.R. 315.501; Table 4 in FPM Supplement 296–31; and the implementing FPM regulations dealing with transfer by selection from a certificate of eligibles. The two regulations cited by MSPB to support the conclusion are puzzling. One reference is to FPM Chapter 315, Subchapter 8, paragraph 8–2, which we have already discussed. That paragraph specifically provides for the circumstance when "an agency selects an employee from a certificate of eligibles, but appoints him/her noncompetitively by . . . transfer. . ." It also provides that such employees do not "have to serve a *new* probationary period" (emphasis in original). There was no explanation as to why this provision was not applicable in the case of *Oulvey.*

The other supporting reference was to 5 C.F.R. 315.801(a)(1). This provision merely recites the categories of appointments for which probationary periods are required. It includes, of course, appointments from a register, i.e., a certificate of eligibles.[4] Again there is no explanation for why the next paragraph of 5 C.F.R. 315.801 was ignored:

(b) A person who is:

(1) *Transferred* under § 315.501.

(2) Promoted, demoted, or reassigned; before he completed probation is required to complete the probationary period in the new position. (Emphasis added.)

If one were to assume that all selections from a certificate are competitive appointments from a certificate, then the sentences in the regulations upon which MSPB relied appear to support the conclusion that a new probationary period must be served. However, the sentences ignored by MSPB in those same regulations make it clear that there are some selections from certificates in which the appointments are made noncompetitively by transfer. The MSPB decision in *Oulvey,* by its silence, ignores the existence of such appointments in which the selection is made from a certificate of eligibles.

Although the *Oulvey* decision provides no guidance as to the basis for the MSPB conclusion, this issue is briefly discussed in dicta in another MSPB case, *Rochniak v. Department of the Navy,* slip op. at 2.[5] In addition to citing *Oulvey,* the MSPB referred to a 1973 Court of Claims decision. It would appear, therefore, that *Marcus v. United States,* 200 Ct.Cl. 544, 473 F.2d 896 (1973), is the basis for the *Oulvey* decision. Close examination will reveal that *Marcus* is not only distinguishable, but that dicta in the *Marcus* decision supports our decision here rather than the *Oulvey* decision.

The plaintiff in *Marcus* left IRS to go to HEW. The SF 50 issued by HEW indicated in block 12, "nature of action," a code "100 Career Appt," and block 14 entitled "Civil Service or Other Legal Authority" had been filled in "CS Register." *Marcus,* 200 Ct.Cl. at 548, 473 F.2d 896. In other words, unlike *Oulvey* and here, there was no entry on the SF 50 completed for Marcus by the appointing agency that described or defined the nature of his appointment as a transfer. All of the pertinent entries reflected a competitive appointment from a certificate of eligibles. Based upon the undisputed entries in blocks 12 and 14, the court concluded that instead of appointment by transfer, as HEW could have done in its discretionary authority under 5 C.F.R. 315.501, "HEW appointed the plaintiff from the Civil Service Register." *Marcus* 200 Ct.Cl. at 548, 473 F.2d 986.

However, the *Marcus* court acknowledged that had the facts involved a transfer, the outcome would have been different. The court cited FPM Chapter 315, Subchapter 8, paragraph 8–2, which contains the general rule upon which the MSPB relied in *Oulvey,* that an appointment by selection from a certificate of eligibles requires the appointee to serve a new probationary period of one year. However, unlike the MSPB, the

---

4. 5 U.S.C. 315.801(a)(1) reads as follows:

(a) The first year of service of an employee who is given a career or career-conditional appointment under this part is a probation-

ary period when the employee: (1) Was appointed from a register . . . .

5. MSPB Docket No. BN315H8090014 (March 24, 1982).

court noted "two pertinent exceptions to this general rule." Neither exception pertained to the plaintiff in *Marcus*. However, the first exception does apply both here and in *Oulvey:*

> If an agency selects an employee from a certificate of eligibles, but appoints him/her noncompetitively by . . . transfer . . . [the employee does not have to serve a new probationary period.]

FPM Chapter 315, Subchapter 8, Paragraph 8–2; *Marcus,* 200 Ct.Cl. at 549, 473 F.2d 896.

*Marcus* correctly stands for the principle that if an employee is appointed from a certificate of eligibles, the employee must serve a new probationary period of one year. However, *Marcus* dealt only with the circumstance in which the personnel action clearly was an appointment from a certificate of eligibles. The *Marcus* court recognized the exception to that rule; i.e., when the agency selects an employee from a certificate of eligibles, but the appointment is by transfer. The MSPB missed the exception and incorrectly carried the ruling in *Marcus* over to cases in which the nature of the personnel action, as indicated on the SF 50 or SF 52, is a transfer and the appointee is reached on a certificate of eligibles. This MSPB decision, as a result, blurs the distinction between transfers and competitive appointments. We therefore disagree with the MSPB.

> "2. Did Shaller have 'competitive status' within the meaning of 5 C.F.R. § 1.3(c)? If not, how could he have been transferred noncompetitively? What is the effect of the purported non-competitive transfer of an employee who is ineligible for non-competitive appointment?"

The FPM defines "transfer" as "the non-competitive employment of a career or career-conditional employee when he/she moves from one agency to another (with or without promotion) without a break in service of one full workday." Paragraph 5–1, Subchapter 5, Chapter 315.

5 C.F.R. § 1.3(c) reads as follows:

> (c) "Competitive status" shall mean eligibility to be noncompetitively selected to fill a vacancy in a competitive position. A competitive status shall be acquired by career-conditional or career appointment through open competitive examination upon satisfactory completion of a probationary period, or may be granted by statute, executive order, or the Civil Service Rules without competitive examination. A person with competitive status may be promoted, transferred, reassigned, reinstated, or demoted without taking an open competitive examination, subject to the conditions prescribed by the Civil Service Rules and Regulations.

Shaller did not have "competitive status" at the time of his appointment at GAO. Without "competitive status" he could not, as 5 C.F.R. § 1.3(c) directs, "*be noncompetitively selected* to fill a vacancy in a competitive position*"* (emphasis added). It is because he lacked "competitive status" that he had to be selected "competitively" from a certificate of eligibles.

As we discussed in our analysis above, Shaller's appointment was a two-step process. First his name was selected from a certificate of eligibles, which is a competitive process. Second, his appointment was effected by transfer, which is noncompetitive. This is exactly the process contemplated by and described in FPM Chapter 315, Subchapter 8, paragraph 8–2:

> If any agency *selects* an employee from a certificate of eligibles, but appoints him/her noncompetitively by . . . transfer, the agency follows the instruction on probation in paragraph . . . e below . . . (emphasis added).

Because he was competitively selected, Shaller's noncompetitive appointment by transfer was not in conflict with the restrictions of 5 C.F.R. § 1.3(c).

> "3. What is the effect on this case of GAO Order 2315.1, Ch. 7, ¶ 2b., which, in apparent contradiction to civil service rules, generally requires noncompetitive transferees to serve a new probationary period?"

The effective date of this GAO Order is October 1, 1980. Shaller was appointed on

May 4, 1980. Substantively, this case is controlled by the Federal personnel laws and regulations which were in effect at the time of Shaller's appointment. Thus, the Order has no effect on this case.[6]

"4. Even if applicable rules and regulations require Shaller to serve a new trial period upon his appointment to the GAO, does 4 C.F.R. § 7.6(e)(1) make an adverse action appeal unavailable here even though the literal language of that provision does not appear to apply? Consider, in this regard, the MSPB's decision in *Rochniak v. Department of the Navy,* MSPB Dock. No. BN315H8090014, slip op. (Mar. 24, 1982.)"

The provision at 4 C.F.R. § 7.6(e)(1), like the GAO Order discussed above, became effective on October 15, 1980. Since Shaller was appointed in May 1980, his appointment status is governed by the laws, rules and regulations existent at the time of his appointment.

However, the GAO provision at 4 C.F.R. § 7.6(e)(1) is a restatement of the provision in the Civil Service Reform Act (CSRA), which was in effect and which did apply to GAO at the time of Shaller's appointment. Under the CSRA provision, adverse action procedures apply to the following:

an individual in the competitive service who is not serving a probationary or trial period under an initial appointment or who has completed 1 year of current continuous employment under other than a temporary appointment limited to 1 year or less;

5 U.S.C. § 7511(a).

*Rochniak* arose when the Department of the Navy terminated appellant during his probationary period as a Security Specialist. Appellant argued that although he was serving a probationary period, he was "not serving a probationary period or trial period under an *initial appointment,*" because he had served in other appointments since

1971. Thus, appellant in *Rochniak* argued that even though he was serving a probationary period, it was not under an "initial appointment" and, therefore, the adverse action procedures applied to him.

The MSPB rejected this argument and the MSPB decision in this case seems well founded. Appellant's interpretation would have meant a serious departure from the practice reflected in the Civil Service Commission's regulations prior to passage of the CSRA. Those regulations clearly envisioned that employees could be required to serve new probationary periods under new appointments regardless of prior length of service. The MSPB reviewed the legislative history of the CSRA provision at 5 U.S.C. § 7511(a) and found a positive statement that the provision was not intended to change existing policy. The MSPB concluded that in the reference to "a probationary period under an initial appointment," the term "initial" was intended to distinguish these probationary periods from the probationary periods created under the CSRA for supervisors, managers and senior executives.

If Shaller had been required by the regulations to serve a new probationary period, there does not appear to be anything in 5 U.S.C. § 7511(a) or in 4 C.F.R. § 7.6(e)(1) that would make an adverse action appeal available. However, because we have found that Shaller, as a transferee, completed his probationary period prior to the GAO termination action, the *Rochniak* issue does not affect his right to adverse action procedures.

For the foregoing reasons, we affirm our December 1, 1981 decision.

Dated: April 15, 1983

/s/ Edward C. Gallas
Edward C. Gallas
Chair

---

6. The GAO Order was promulgated pursuant to the GAO Personnel Act, which took effect on October 1, 1980. Under the Act, a personnel system for GAO separate from that of the executive branch was established. For appointments on or after October 1, 1980, the GAO Order, rather than OPM regulations and the FPM, presumably will govern probationary requirements. Thus, the circumstances and result presented in this case would not arise again at GAO.

/s/ Mollie H. Bowers
Mollie H. Bowers
Member
/s/ Ellen M. Bussey
Ellen M. Bussey
Member
/s/ Jerome H. Ross
Jerome H. Ross
Member
/s/ Robert T. Simmelkjaer
Robert T. Simmelkjaer
Member