Richard MURPHY, Plaintiff–Appellant,

v.

Richard E. WALKER, et al., Defendants–Appellees.

No. 94–1820.

United States Court of Appeals, Seventh Circuit.

Submitted February 9, 1995 *.

Decided April 4, 1995.

---

* After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal is submitted on the briefs and the record.

Richard Murphy, Vienna, IL, pro se.

James G. Sotos, Hervas, Sotos & Condon, Itasca, IL, for Richard E. Walker, Leland Keith, Kelly Noble, and Keith Grant.

James G. Sotos, Hervas, Sotos & Condon, Itasca, IL, Stewart J. Umholtz, Office of State's Atty. of Tazwell County, Pekin, IL, for James R. Donahue.

Before BAUER, COFFEY, and FLAUM, Circuit Judges.

PER CURIAM.

Richard Murphy filed a pro se complaint against Mason and Tazwell County officials and officers under 42 U.S.C. § 1983 alleging violations of his constitutional rights during his pretrial detention at the Mason County Jail and Tazwell County Jail. The alleged deprivations began on November 9, 1992, when Keith Grant, a Mason County corrections officer, accidentally closed a chuck hole door on Murphy's hand, fracturing his fourth and fifth metacarpals.[1] After this incident, Murphy claims that Mason County officials provided him with inadequate medical care. He further states that Mason County officials improperly shackled him to the floor of his cell and revoked his telephone privileges as punishment for accusing Grant of breaking his hand. Finally, Murphy alleges unconstitutional conditions of confinement and inadequate medical care after his transfer to the Tazwell County Jail. The district court dismissed Murphy's suit for failure to state a claim.

## I.  Jurisdiction

■ The defendants argue that we do not have jurisdiction to hear this case because Murphy filed an untimely notice of appeal. On October 28, 1993, the district court dismissed Murphy's complaint with prejudice based on its mistaken belief that Murphy had not responded to its order to show cause why his complaint should not be dismissed.[2] Murphy filed a motion to reconsider, which the district court granted on December 8. The court granted Murphy leave to amend his complaint and stated that "the case will be reopened if the plaintiff submits an amended complaint within 21 days." Minute Entry of December 8, 1993. Murphy, however, failed to submit an amended complaint within the 21–day deadline. On March 30, 1994, the district court denied Murphy's request for an extension of time to file his amended complaint and stated that "[t]he case shall remain closed." Minute Entry of March 30, 1994. On April 11, Murphy filed a notice of appeal.

The defendants urge that the aforementioned facts allow only three possibilities, any one of which, they claim, give us no jurisdiction to hear this appeal. First, the defendants argue that if the appeal refers to the order of October 28, it is untimely. Second, the defendants argue that the district court's decision became final on December 29 (after Murphy failed to submit an amended complaint within 21 days), and an appeal to the December 29 final decision would be untimely. Finally, the defendants concede that the appeal is timely as to the March 30 order. They argue, however, that because the case became final on December 29, far more than 30 days prior to the filing of the notice of appeal, the scope of such an appeal would be limited to a review of the district court's refusal to grant an extension of time to amend the complaint—an issue that Murphy does not raise.

We believe that Murphy's appeal was directed toward the March 30 order and was thus timely. In addition, the March 30 order constituted a final decision. A final decision is one that "en[ds] the litigation on the merits." *Firstier Mortgage Co. v. Investors Mortgage Co.*, 498 U.S. 269, 273, 111 S.Ct. 648, 651, 112 L.Ed.2d 743 (1991), *quoting Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633–34, 89 L.Ed. 911 (1945). By stating on March 30 that the case would "remain closed," the district court declared that Murphy would not be allowed to further amend his complaint, signalling the end of the litigation in the district court. Contrary to the defendants' assertion, the scope of Murphy's appeal is not limited to the issue of

---

**1.** Although Murphy states that Grant slammed the door on his hand, *see* R. 8, Complaint at 4, he does not appear to allege that Grant intentionally slammed the door on his hand, in violation of his constitutional rights. Rather, Murphy refers to the incident as an "accident" and alleges nothing more than negligence on this count. *See* Response to Motion to Dismiss and for More Definite Statement, R. 24, ¶ 4. Only intentional or reckless injury amounts to a violation of a pretrial detainee's rights. *See Brownell v. Figel*, 950 F.2d 1285, 1290 (7th Cir.1991).

**2.** In fact, Murphy had filed a response to the order to show cause on October 25.

whether the district court improperly denied Murphy leave to amend his complaint. An "appeal brings up not only the final decision but also all prior rulings that affect the validity of that decision." *Asset Allocation and Management Co. v. Western Employers Ins. Co.*, 892 F.2d 566, 569 (7th Cir.1989). The validity of the March 30 order depends, at least in part, on the validity of the dismissal that became effective on December 29.[3] In addition, the district court never entered a Rule 58 judgment confirming that the case was terminated on December 29.[4] Therefore, Murphy's appeal to the March 30 order brings up the December 29 dismissal for review.[5]

## II. Claims Against Mason County Officials

█ The district court dismissed Murphy's complaint for failure to state a claim. We review dismissals under Rule 12(b)(6) de novo, accepting as true "all factual allegations in the complaint and "draw[ing] all reasonable inferences from these facts in favor of the plaintiff." *Arazie v. Mullane*, 2 F.3d 1456, 1465–66 (7th Cir.1993).

### A. Inadequate Medical Care

█ Murphy alleges that Mason County Sheriff Richard Walker, Deputy Sheriff Leland Keith, and officers Kelly Noble and Keith Grant violated a number of his constitutional rights. First, he claims that after he suffered a broken hand he received inadequate medical care based on the two-hour

delay between the time of the injury and the time he was taken to the hospital.

Pretrial detainees, who are protected by the Due Process Clause, will state a claim for inadequate medical treatment if they allege "deliberate indifference to the[ir] serious medical needs." *Brownell v. Figel*, 950 F.2d 1285, 1289 (7th Cir.1991); *Salazar v. City of Chicago*, 940 F.2d 233, 239 (7th Cir.1991). Murphy does not allege that the defendants delayed taking him to a doctor for two hours in knowing disregard of an excessive risk to his health or well-being. *Cf. Farmer v. Brennan*, — U.S. —, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). Apparently, the wait occurred because the corrections officers needed to get Sheriff Walker's permission to take him to the hospital. R. 8, Complaint at 4. Moreover, two hours does not seem like an unreasonably long wait to x-ray, examine, and possibly cast a fractured extremity, and Murphy does not allege that the injury required immediate attention. Thus, the district court properly dismissed this claim.

### B. Retaliation

█ Next, Murphy alleges that Mason County officers shackled him to the floor of his cell and took away phone privileges, television privileges, his cigarettes, and his lighter as punishment for blaming Grant for the breaking of his hand. Generally, confinement of pretrial detainees may not be punitive, because "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441

---

3. We note that Murphy could have appealed directly from the December 29 order. When the district court granted Murphy's motion for reconsideration on December 8, it converted the dismissal with prejudice into a dismissal without prejudice. Murphy then had three weeks to amend his complaint before the dismissal would once again become final. When he failed to submit an amended complaint by December 29, the dismissal became a final decision within the meaning of 28 U.S.C. § 1291. *See Otis v. City of Chicago*, 29 F.3d 1159, 1165 (7th Cir.1994) (en banc) ("Once the time to satisfy the condition has expired, the order is 'final' "). Murphy, however, was not required to appeal directly from the December 29 decision. *See id.* at 1166 (it is wrong to conclude "that the maximum number of opportunities to appeal is one").

4. The court did enter a Rule 58 judgment on October 28. The October 28 dismissal, however, was nullified by the December 8 order.

5. The defendants argue that the rule we apply will allow litigants to "circumvent the time requirement for appeal by filing a routine motion many months after the case has been disposed of by the court." Brief for Appellees at 11. Until the district court issues a Rule 58 judgment, however, the time to appeal has not expired; thus, no otherwise time-barred appeals will be resurrected through the filing of subsequent motions. We note that the defendants could have prevented the current controversy by petitioning the district court to enter a Rule 58 judgment on December 29.

U.S. 520, 535, 99 S.Ct. 1861, 1872, 60 L.Ed.2d 447 (1979). Thus, conditions of pretrial confinement must be "reasonably related to a legitimate governmental objective." *Id.*, 441 U.S. at 539, 99 S.Ct. at 1874.

■ If Murphy was indeed shackled to the floor of his cell, and we assume his factual allegations are true for the purposes of this appeal, *see Arazie*, 2 F.3d at 1465–66, the district court erred in dismissing this claim. Shackling one to the floor is an extreme measure, and several courts have stated that bodily restraints may not be used as punishment; they may only be used on violent inmates who pose a threat to others or suicidal inmates who pose a threat to themselves. *Ferola v. Moran*, 622 F.Supp. 814 (D.R.I.1985); *Stewart v. Rhodes*, 473 F.Supp. 1185, 1192 (S.D.Ohio 1979), *aff'd*, 785 F.2d 310 (6th Cir.1986).[6] Even if shackling is permissible as punishment in limited circumstances, Murphy, as a pretrial detainee, possessed a liberty interest in freedom from bodily restraint, and he is entitled to recover for this infringement unless the government demonstrates a legitimate penological or medical reason for its use of shackles. *See Youngberg v. Romeo*, 457 U.S. 307, 320–22, 102 S.Ct. 2452, 2460–61, 73 L.Ed.2d 28 (1982) (involuntarily committed mental patients entitled to "freedom from unreasonable restraints"); *Wells v. Franzen*, 777 F.2d 1258, 1261 (7th Cir.1985) (mental patient may not be restrained "except pursuant to an appro-

priate exercise of judgment by a health professional"); *Wheeler v. Glass*, 473 F.2d 983, 987 (7th Cir.1973) (allegation of punitive shackling of mental patients "in spread-eagle fashion" for 77½ hours stated claim under constitution). Accordingly, we remand this claim to the district court, where, if Murphy's allegation is true, the defendants are entitled to be given an opportunity to demonstrate a legitimate justification for the use of shackles.

■ In addition, Murphy alleges that his telephone privileges were improperly revoked. If Murphy asserts that the denial of telephone privileges impeded his access to an attorney, this allegation is sufficient to state a claim. Restrictions on a detainee's telephone privileges that prevented him from contacting his attorney violate the Sixth Amendment right to counsel. *Tucker v. Randall*, 948 F.2d 388, 390–91 (7th Cir. 1991).[7] Thus, we remand this claim in order that the district court might determine whether the denial of telephone privileges infringed on Murphy's Sixth Amendment rights. Also, if the Mason County officials identify legitimate reasons, security or otherwise, for limiting Murphy's access to a telephone, they may avoid liability. *See Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir.1988), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988). The district court dismissed this claim prematurely.[8]

---

**6.** Whether using bodily restraints as punishment violates the Eighth Amendment is an open question in this circuit. *See Wells v. Franzen*, 777 F.2d 1258, 1263 n. 3 (7th Cir.1985).

**7.** In certain limited circumstances, unreasonable restrictions on a detainee's access to a telephone may also violate the Fourteenth Amendment. *Tucker*, 948 F.2d at 391; *Duran v. Elrod*, 542 F.2d 998, 1000 (7th Cir.1976); *Robinson v. Moses*, 644 F.Supp. 975, 979 (N.D.Ind.1986).

**8.** We find no support in the case law for Murphy's claim that denying him cigarettes and television amounts to a constitutional violation. *See Robinson v. Moses*, 644 F.Supp. 975, 979 (N.D.Ind.1986) (holding detainee in city-county lockup without television facilities not violation of Fourteenth Amendment); *cf. James v. Milwaukee County*, 956 F.2d 696, 699 (7th Cir.1992) ("a prisoner who is denied ... a television set has not set out a deprivation of [his rights under] ...

the eighth amendment"), *cert. denied*, —— U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992). Thus, the district court properly dismissed these claims.

In addition, Murphy's appellate brief includes an allegation not raised before the district court that his mail privileges were improperly revoked. If true, this may state a claim under the Due Process Clause. *Cf. Thornburgh v. Abbott*, 490 U.S. 401, 413, 109 S.Ct. 1874, 1881, 104 L.Ed.2d 459 (1989). However, we will not generally review claims that are raised for the first time on appeal, *see House v. Belford*, 956 F.2d 711, 720 (7th Cir.1992), although we may, when reviewing 12(b)(6) dismissals, "consider new factual allegations raised for the first time on appeal provided they are consistent with the complaint." *Highsmith v. Chrysler Credit Corp.*, 18 F.3d 434, 439 (7th Cir.1994). Thus, on remand, we instruct the district court to consider Murphy's

## C. Shower Incident [9]

■ On December 27, 1992, Murphy slipped and fell while taking a shower at the Mason County Jail, sustaining what he describes as a severe head injury. He alleges that the shower had no rails, floor mats, or other safety devices, making it unsafe for showering. He does not claim, however, that county officials intentionally or recklessly maintained the shower in an unsafe condition, nor does he allege that they were aware of previous accidents in the jail shower. Thus, at most, Murphy is claiming that county officials negligently provided unsafe shower facilities, which is insufficient to state a claim under the Due Process Clause. *See Brownell*, 950 F.2d at 1290.

Murphy also alleges inadequate medical care arising out of this incident. Initially, he claims that after he fell, no one came to his aid for an hour and a half. However, he admits that no one noticed that he had fallen. Thus, the district court properly dismissed this claim, as Murphy alleges no deliberate indifference on the part of Mason County officials.[10] Next, he complains that jail officials improperly substituted Motrin for ibuprofen, which a doctor had prescribed to treat his pain.[11] However, this was not a violation of his rights, as Motrin is a "trademark for a preparation of ibuprofen." *Dorland's Medical Dictionary*, 27th ed., p. 1056 (W.B. Saunders Co. 1988).

■ Finally, Murphy alleges that the pain and discomfort from the head injury remained constant and did not subside and that he "put in over two months of request[s]" to see a physician, but he "never did see any medical personnel." R. 8, Complaint at 5A. This allegation is more substantial. A pretrial detainee must be provided with medical treatment if a reasonable officer would have considered the injury serious. *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir.1991). Any injury to the head unless obviously superficial should ordinarily be considered serious and merits attention until properly diagnosed as to severity. When he filed the complaint, five months after the injury occurred, Murphy stated that he was still experiencing "excruciating pain in his head and back," that he could not "sit, stand, [or] walk for any lengt[h] of time," and that he would get "very bad headaches when he tr[ied] to read and/or write a letter or when [he was] under any type of light for any length of time." R. 8, Complaint at 5A. Rather than having him examined by a qualified physician or surgeon, Murphy alleges that corrections officers told him to "stop being a baby" and that he should learn to live with the pain. *Id.* In light of the severity and the length of the pain and discomfort alleged, we believe that a reasonable officer should have found Murphy's condition serious enough to merit a physician referral, evaluation and treatment if indicated. Any injury to the head inflicting prolonged pain and discomfort mandates medical evaluation within a reasonable period of time.[12] Thus, the district court erred in dismissing this claim, as Murphy's claim is sufficient when it alleges that the corrections officers were deliberately indifferent to his need to receive adequate medical treatment for his head injury, amounting to "unnecessary and wanton infliction of pain" by "intentionally denying or delaying access to medical care." *See Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

---

claim that his mail privileges were improperly revoked.

9. Murphy does not discuss the shower incident in his appellate brief, so it may be waived. The district court, however, dismissed Murphy's complaint without comment or reference to the individual claims, and Murphy's pro se appeal may be broadly construed to ask us to review the dismissal of his entire complaint. Thus, we will treat the claims arising out of the shower incident as raised on appeal.

10. Deliberate indifference includes "intentional or reckless conduct, and 'reckless' is used in the constitutional sense; that is, conduct that is so

dangerous that the defendant's knowledge of risk can be inferred." *Brownell*, 950 F.2d at 1290 (citations omitted).

11. After his fall, a doctor prescribed 800 milligrams of ibuprofen three times per day for Murphy's head injury. R. 8, Hospital Records.

12. We need not define "prolonged" for the purposes of this case, as the months of suffering that Murphy allegedly endured certainly qualify as prolonged discomfort. We are of the opinion that injuries of the cranial cavity can and should be treated within a matter of minutes or hours rather than after several days, weeks, or months.

## III. Claims Against Tazwell County Officials

According to Murphy's complaint, on November 9, after his hand was broken and the shackling occurred, Murphy was transferred to the Tazwell County Jail. Murphy lists James R. Donahue, the Tazwell County Sheriff, as a defendant and alleges that Tazwell County officers (1) provided him with inadequate medical care by improperly removing the cast from his hand, failing to take him in for a follow-up examination, and refusing to give him his prescribed Tylenol tablet four times daily as prescribed by the examining physician and (2) subjected him to unconstitutional conditions of confinement.

### A. Medical Care

■ Murphy claims that Tazwell County officers violated his rights by (1) removing the plaster cast, splint, and ace bandage from his hand without adequate medical supervision and/or direction;[13] (2) not allowing him to see a doctor for a follow-up examination;[14] and (3) refusing to provide him with a prescribed extra-strength Tylenol tablet four times per day.

We find the allegations of the casual removal of the cast and splint from Murphy's hand and the failure to take him in for his follow-up examination troubling. A broken hand is a serious injury, and permanent harm or a "lingering disability," see Davis, 936 F.2d at 973, could result absent proper evaluation, possible realignment, and treatment. We believe that, in the vast majority of instances, any reasonable officer ought to conclude that a broken hand is a serious injury and that a cast is necessary. Thus, proper follow-up care should have been provided. The district court should have re-

quired the defendants to respond to Murphy's allegation that they acted with deliberate indifference by removing his cast without a doctor's approval and by failing to take him in for his follow-up examination and x-rays if indicated.

Murphy's allegation that Tazwell County officials failed to provide him with his prescribed extra-strength Tylenol tablet four times daily also states a claim under the Due Process clause. The allegations concerning the casual removal of the cast, denial of follow-up treatment, and denial of the prescribed Tylenol tablets are all part of the same course of conduct concerning the medical problems: the alleged failure of Tazwell County officials to assure that Murphy received adequate treatment for his broken hand. In addition, a doctor specifically prescribed extra-strength Tylenol for Murphy four times per day. Finally, Murphy asserts that the corrections officers intentionally withheld the medication from him, and we certainly do not and will not countenance the "unnecessary and wanton infliction of pain," see Estelle, 429 U.S. at 104, 97 S.Ct. at 291, that may be caused by the intentional withholding of prescribed medication. Thus, we remand the Tylenol claim, along with the claims concerning the removal of the cast and the denial of follow-up treatment, for review by the district court.

### B. Conditions of Confinement

■ Murphy claims he was subjected to unconstitutional conditions of confinement at the Tazwell County Jail. He states that, upon his arrival, he was stripped and put in a cold cell with no bed, mattress, pillows, blankets, heat,[15] or clothing. These conditions

---

13. Murphy alleges that the cast and splint "came off," R. 8, Complaint at 5, and the defendants appear to deny that they removed the cast and splint, arguing that the wrappings "fell off." Brief for Appellees at 14. The scant likelihood of a plaster cast simply "falling off" notwithstanding, a reasonable inference from Murphy's complaint (which we must take as true) is that the cast and splint "came off" as a result of his being stripped when he arrived at the Tazwell County Jail and, at the very least, the defendants were responsible for insuring that he received the necessary medical treatment for his broken hand.

14. The physician who treated Murphy's broken hand instructed that he be given a follow-up examination in seven days. See R. 8, Hospital Records. The defendants argue that Murphy does not explicitly allege that they knew the doctor had recommended a follow-up appointment. However, this allegation is implicit in Murphy's complaint.

15. The transfer to Tazwell County Jail occurred on November 9, and Murphy alleges that "it was very cold out that day." R. 8, Complaint at 5.

allegedly persisted for a week and a half. *See* R. 8, Complaint at 5. These allegations are sufficient to state a claim under the Due Process Clause. Although Murphy had no constitutional right to confinement in comfort, *see Martin*, 845 F.2d at 1457 (detainee has no right to a pillow, new tennis shoes, or frequent laundry service); *cf. Caldwell v. Miller*, 790 F.2d 589, 601 (7th Cir.1986), he possessed a right to adequate heat and shelter. *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir.1991), *cert. denied*, 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992). Murphy's contention that he was confined to a cold cell without clothes and heat in the middle of November is a sufficient allegation of inadequate heat and shelter.[16] Thus, the district court improperly dismissed Murphy's claim that he was subjected to unconstitutional conditions of confinement at the Tazwell County Jail, and we remand this claim to the district court.

## IV. Conclusion

In conclusion, Murphy's claims that his repeated requests to see a physician after his head injury were improperly denied, that his cast was wrongfully removed, that he was not allowed to see a physician for a follow-up appointment for his fractured hand, that he was denied his prescribed extra-strength Tylenol medication, that he was improperly shackled to the floor of his cell, that he was deprived of phone privileges, and that he was deprived of adequate heat and shelter are REMANDED to the district court for further proceedings consistent with this opinion. The district court's dismissal of the claims concerning his two-hour wait before his broken hand was treated, the denial of television and cigarettes, the lack of handrails and mats in the shower, the hour-and-a-half delay between when he slipped in the shower and when he was discovered, and the substitution of Motrin for ibuprofen are AFFIRMED.

---

**16.** Murphy does not specifically state what the outdoor temperature was on the days that these conditions allegedly persisted. The weather in Tazwell County on November 9, 1992 and the days following is, we assume, a matter of public record, and thus whether the inadequate heat claim is meritorious should become apparent through discovery.