**Donald W. BROWNELL,**
**Plaintiff–Appellant,**

v.

**Dan FIGEL, G.J. Roth, Steve McAllister, T. Bird, J. Bickel, Adams Township, Barry Gerig, as Trustee of Adams Township, S. McAllister, and T. Schulz, Defendants–Appellees.**

**No. 90–3160.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 6, 1991.

Decided Dec. 17, 1991.

Robert L. Thompson, Peebles, Thompson, Rogers & Skekloff, Charles W. McNagny, argued, Fort Wayne, Ind., for plaintiff-appellant.

David R. Steiner, Jim Fenton, James P. Posey, Beers, Mallers, Backs, Salin & Larmore, Alan VerPlanck, Gary J. Rickner, John Lyons, argued, Barrett & McNagny, John O. Feighner, Haller & Colvin, Fort Wayne, Ind., for Daniel L. Figel.

David R. Steiner, Jim Fenton, James P. Posey, Beers, Mallers, Backs, Salin & Larmore, John O. Freighner, Haller & Colvin, Fort Wayne, Ind., for G.J. Roth.

David R. Steiner, Jim Fenton, James P. Posey, Beers, Mallers, Backs, Salin & Larmore, Alan VerPlanck, Gary J. Rickner, John Lyons, Barrett & McNagny, John O. Freighner, Haller & Colvin, Fort Wayne, Ind., for J. Bickel.

David R. Steiner, Jim Fenton, Robert T. Keen, Jr., Miller, Carson & Boxberger, James P. Posey, Beers, Mallers, Backs, Salin & Larmore, Alan VerPlanck, Gary J. Rickner, John Lyons, Barrett & McNagny, John O. Feighner, Haller & Colvin, Fort Wayne, Ind., for Barry Gerig.

Jim Fenton, Edward L. Murphy, Jr., argued, Miller, Carson & Boxberger, Alan VerPlanck, John Lyons, Barrett & McNagny, Fort Wayne, Ind., for S. McAllister and T. Schulz.

David R. Steiner, Jim Fenton, Robert T. Keen, Jr., Edward Murphy, Jr., Miller, Carson & Boxberger, Fort Wayne, Ind., for Adams Township.

Before CUDAHY and FLAUM, Circuit Judges, and ROSZKOWSKI, Senior District Judge.[*]

FLAUM, Circuit Judge.

Driving under the influence of alcohol, Donald W. Brownell collided with a guardrail in the wee hours of the morning. County officials delivered him to the hospital and then to the county lockup, where he awoke the next morning a quadriplegic. Brownell alleges that sometime during that morning, the sheriff, the police, the emergency medical technicians (E.M.T.), and the county jailors engaged in conduct responsible for his condition. Pursuant to 42 U.S.C. § 1983, Brownell filed a complaint in federal district court alleging that the defendants violated his constitutional rights by employing unreasonable force against him and by denying him adequate medical care. In addition, a pendent count recasts these claims as violations of state tort negligence law. After extensive discovery, the district judge granted the defendants' motion for summary judgment on all claims. On appeal, Brownell contends that the district court erred because genuine issues of material fact remain for trial. For the reasons offered below, we affirm.

## I.

We review the facts, necessarily in some degree of detail, in the light most favorable to Brownell.[1] At approximately 2:45 a.m. on September 9, 1988, while travelling on U.S. 24 in Allen County, Indiana, Brownell apparently lost control of his automobile, crossed the median, and struck a guardrail on the opposite side of the highway. Lt. Greg Roth of the Allen County Police Department, and Steve McAllister and Tim Schulz, E.M.T.'s with the Adam's Township Fire Department, arrived at the scene shortly after the accident.[2]

Roth, McAllister, and Schulz discovered Brownell, apparently unconscious, lying

[*] The Honorable Stanley J. Roszkowski, Senior District Judge of the United States District Court for the Northern District of Illinois, sitting by designation.

1. Because Brownell is unable to remember most of what happened, the facts are pieced together in large part without the benefit of his version of the events.

2. Brownell's original complaint included a § 1983 claim against Barry Gerig, as Trustee of Adams Township, and against Schulz and McAllister. Brownell dropped this claim but, as discussed below, he continues to press state negligence claims against these individuals.

across the passenger seat of his 1980 El Camino with his feet tucked under the steering wheel. They all noticed a strong smell of alcohol on Brownell and Roth discovered several beer cans in the car. McAllister examined Brownell for injuries while Roth conducted an investigation of the scene and called a tow truck. In response to McAllister's flashlight, Brownell opened his eyes; when asked if he was injured, Brownell responded "no" and began swearing. Brownell told McAllister to keep his hands off of him and to leave him alone to sleep. When McAllister attempted to examine Brownell for injury, Brownell persisted in acting combative, pushing away McAllister's hands and swearing at him. After extricating Brownell from the car, the E.M.T.'s placed him on a backboard and transported him to the Parkview Hospital emergency room. During this process, Brownell fought against the backboard restraints and attempted to remove the straps. The E.M.T. Transport Report stated that Brownell had no obvious signs of injury.

During an examination by Dr. James Bolander, Brownell smelled of alcohol, and continued swearing, resisting restraint, and occasionally nodding off to sleep. Indeed, the doctor described Brownell as the most abusive person he had encountered in his five years at Parkview Hospital. Dr. Bolander found no sign of injury nor any misalignment of Brownell's spine. He concluded Brownell was simply intoxicated and released him to the police.

Before leaving, a nurse asked Brownell to sign a hospital release form, which he was either unable or unwilling to do. After Roth signed the release form on Brownell's behalf, two hospital security guards wheeled Brownell to a waiting patrol car. Roth informed Brownell that he suspected him of driving under the influence of alcohol and that he wished to escort him to the police station in order to administer a Breathalyzer test. In response to Roth's instruction to get into the car, Brownell did not move. With the assistance of the two security guards and McAllister, Roth lifted Brownell into the front passenger seat of his patrol car.

After driving Brownell to the sally port of the county lockup, Roth asked him to exit the car in order to take a Breathalyzer test. Because Brownell failed to move, Roth lifted him out of the cruiser and placed him on the ground. Joseph Bickel, another police officer, and Thomas Bird, a civilian jailer, were summoned to help out. The officers continued talking to Brownell in an attempt to get him to respond. When again asked to cooperate in the administration of a Breathalyzer test, Brownell responded, "I can't. My arms and legs don't move." Roth Deposition at 87–88. The only movement Brownell made during this time was batting motions with his hands, apparently in an effort to make the officers leave him alone.

In an attempt to rouse Brownell from his stupor, Bickel applied a "pen hold," a technique designed to put pressure on the knuckles to evoke a pain response. Brownell did not respond. Bickel then tried a "mandibular angle pressure point" on Brownell, which involves applying pressure to a nerve behind the jaw bone and pushing straight forward toward the chin. The second time Bickel applied this technique, Brownell winced. Concluding Brownell would not stand up of his own volition, the officers tried, unsuccessfully, to stand him on his feet.

Because Brownell failed to cooperate in taking a Breathalyzer, the officers arrested him for driving while intoxicated. Bird and Bickel picked him up off the floor and lugged him over to the processing counter. Brownell continued to verbally abuse the officers and flail his arms about in a sluggish manner. After conducting a pat down search, Bickel and another officer placed Brownell on the floor of a cell to "sleep it off." Believing Brownell feigned his inability to move, and in a final attempt to arouse him, Bird sprayed some "CS gas" (a repellant similar to mace) on Brownell's stomach. Brownell did not react.

At 7:00 a.m., officer Jerry Hosier came on duty, and one of the outgoing officers informed him of Brownell's intoxication, the accident, the trip to the hospital, the

doctor's diagnosis, and the events at lock-up. At approximately 8:30 a.m., while on routine rounds, Hosier saw that Brownell was awake and explained to him that he needed to get up to go to court. Apparently still in a stupor, Brownell responded unintelligibly. Later, realizing Brownell had not moved, Hosier became concerned and summoned the staff nurse. At 11:30 a.m., the nurse determined through a pin prick test that Brownell had no sensation in his feet. Brownell was returned to Parkview Hospital by ambulance where doctors diagnosed a fractured, displaced vertebra, and permanent quadriplegia. At that time, nearly twelve hours after the accident, Brownell's blood-alcohol content measured .14%. Finding no evidence of excessive force, denial of medical care, or negligence, the district court granted summary judgment to the defendants on all claims. Brownell appeals.

## II.

We review *de novo* a district court's grant of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986). In doing so, we must review the record and all inferences drawn from it in the light most favorable to the nonmovant, *Lohorn v. Michal,* 913 F.2d 327, 331 (7th Cir.1990), and determine whether a genuine issue exists as to any material fact. Fed.R.Civ.P. 56(c). Put another way, we decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2511–12. A scintilla of evidence in support of the nonmovant's position is insufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.; see also In re Wildman,* 859 F.2d 553, 557 (7th Cir.1988); *Klein v. Ryan,* 847 F.2d 368, 374 (7th Cir.1988); *Valentine v. Joliet Township High School Dist.,* 802 F.2d 981, 986 (7th Cir.1986). With this standard in mind, we examine each of Brownell's claims in turn.

## III.

Section 1983 provides a cause of action against government employees who, acting under color of law in their official capacity, violate the constitutional rights of another. Brownell's first claim is that Roth, Bickel, and Bird, acting in their official capacity, violated his due process rights by failing to provide him with adequate medical care.[3] Specifically, Brownell contends that the defendants, faced with obvious signs of injury, caused or compounded his spine fracture by failing to seek medical aid, thereby violating his right to be free from punishment.

The alleged deprivation of medical treatment occurred during Brownell's pretrial detainment for drunk driving, between his arrest and conviction. The due process clause of the fourteenth amendment prohibits punishment of pretrial detainees prior to a formal adjudication of guilt. *Bell v. Wolfish,* 441 U.S. 520, 535–39, 99 S.Ct. 1861, 1871–74, 60 L.Ed.2d 447 (1979). Prohibited punishment has been held to include deliberate indifference to the serious medical needs of pretrial detainees.[4] *Salazar v. City of Chicago,* 940 F.2d

---

**3.** Brownell originally asserted a § 1983 claim against Sheriff Figel, alleging a failure to properly train and supervise his agents in handling the medical needs of detainees. *See City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). Because Brownell chose not to raise the district court's dismissal of this claim on appeal, it is waived. *See United States v. White,* 879 F.2d 1509, 1513 (7th Cir. 1989), *cert. denied,* 494 U.S. 1027, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990).

**4.** The government generally has no affirmative constitutional duty to provide medical services to its citizens. *DeShaney v. Winnebago County Dep't of Social Servs.,* 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Archie v. City of Racine,* 847 F.2d 1211, 1220–23 (7th Cir.1988) (en banc), *cert. denied,* 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 809 (1989). However, once in government custody, the due process clause entitles citizens to medical treatment in some circumstances. *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1005–06; *see also K.H. ex rel. Murphy v. Morgan,* 914 F.2d 846, 849 (7th Cir.1990).

233, 237–242 (7th Cir.1991); *Shelby County Jail Inmates v. Westlake*, 798 F.2d 1085, 1094 (7th Cir.1986); *see also Holmes v. Sheahan*, 930 F.2d 1196, 1199 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 423, 116 L.Ed.2d 443 (1991); *Martin v. Tyson*, 845 F.2d 1451, 1457–58 (7th Cir.), *cert. denied*, 488 U.S. 863, 109 S.Ct. 162, 102 L.Ed.2d 133 (1988); *Anderson v. Gutschenritter*, 836 F.2d 346, 348–49 (7th Cir.1988). "Deliberate indifference" is merely a synonym for intentional or reckless conduct, *Salazar*, 940 F.2d at 238; *Duckworth v. Franzen*, 780 F.2d 645, 652 (7th Cir.1985), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986), and "reckless" is used in the constitutional sense; that is, conduct that is so dangerous that the defendant's knowledge of risk can be inferred. *Salazar*, 940 F.2d at 238; *Duckworth*, 780 F.2d at 652. Accordingly, we must ascertain whether Roth, Bird, and Bickel intentionally, recklessly, or with deliberate indifference withheld medical care from Brownell.[5] Absent an issue of material fact that they did so, the grant of summary judgment must stand.

██ It is clear that, at least *initially*, the defendants afforded Brownell his right to medical care: they delivered him directly from the accident scene to the hospital (as opposed to taking him straight from the accident scene to the lockup). But the right to medical care for serious injury would be a hollow one if it did not continue throughout the duration of detention. So the central issue emerges: in failing to take Brownell *back* to the hospital for *another* medical examination, were Roth,

Bickel, and Bird deliberately indifferent to his medical needs? Brownell argues the defendants should have interpreted his unusual behavior at the lockup—for example, his statement that his arms and legs would not move, his unresponsiveness to pain techniques and mace, his general inactivity—as a sign of injury requiring another medical examination. Given his intoxicated condition, we cannot say that the defendants' failure to ascertain that Brownell was seriously injured on the basis of his unusual behavior manifested deliberate indifference to his medical needs.

A profitable comparison can be drawn to *Salazar*, where the estate of a drunk driver who died in police custody brought a similar § 1983 action alleging deprivation of medical care. Early one morning, Salazar drove head-on into a parking meter and then into the front wall of a restaurant. After a brief examination by paramedics at the accident scene, and after refusing further treatment, Salazar was taken to the lockup where he died from a latent internal injury (one that paramedics failed to discover). The decedent's estate argued that the lockup officers should have taken his unusual behavior—shifting around in the cell, various states of undress, and lying on the floor rather than a cot—as a sign of serious injury. In affirming a directed verdict for the lockup officers, this Court concluded that the failure to interpret this behavior as a sign of injury, rather than intoxication, did not rise to the level of deliberate indifference.

---

**5.** Earlier, in *Matzker v. Herr*, 748 F.2d 1142, 1147 (7th Cir.1984), we rejected a deliberate indifference or intent inquiry, holding that a pretrial detainee must receive "prompt[ ] and reasonabl[e]" medical treatment. However, in *Salazar* and cases cited therein, we expressly disavowed this earlier approach. Four other circuits have also adopted a deliberate indifference standard for alleged due process violations against pretrial detainees. *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir.1986); *Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir.1985), *cert. denied*, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986); *Garcia v. Salt Lake County*, 768 F.2d 303, 307 (10th Cir.1985); *Whisenant v. Yuam*, 739 F.2d 160, 163 n. 4 (4th Cir.1984). *But see Alberti v. Klevenhagen*, 790 F.2d 1220,

1224 (5th Cir.1986) (holding that the due process clause provides greater protection to pretrial detainees); *Boswell v. County of Sherburne*, 849 F.2d 1117, 1121 (8th Cir.1988) (opting to leave the question open).

Here, in evaluating the conduct of the defendants, the district judge (and both parties before this Court) relied on our holding in *Matzker* which, as noted, has been modified by more recent decisions of this Court. Conduct that is constitutional under the broader standard of *Matzker* necessarily meets the narrower standard of *Salazar*. Because we conclude that the defendants' conduct meets the narrower standard, application of the broader standard was harmless.

Likewise, the failure of Roth, Bickel, and Bird to interpret Brownell's unusual behavior as a sign of injury, rather than extreme intoxication,[6] does not rise to the level of deliberate indifference. Only inattention to serious injury (or signs of serious injury) amounts to a constitutional violation; the due process clause does not require hospital care for minor injuries. *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991); *Martin*, 845 F.2d at 1457; *Matzker*, 748 F.2d at 1147 n. 3. In *Davis*, the pretrial detainee argued police had reason to suspect a one-inch cut on his temple might be serious, requiring immediate medical attention. We held that the due process clause does not require medical care for detainees whose injuries appear to be slight but turn out to be serious, and that no reasonable person could believe that a one-inch cut could result in a serious injury. We also stated that whether the injury is actually serious is a question best left to a physician. In the present case, while the injury turned out to be serious, the officers did not believe Brownell was even *slightly* injured; they believed he was just drunk. At the lockup, Brownell's lethargic behavior was entirely consistent with the doctor's diagnosis of intoxication—he nodded off to sleep, he was unintelligible, he reeked of alcohol, he was verbally abusive. An officer, within the pale of reason, could certainly believe that a person in a drunken stupor claiming an inability to move does so in hopes of being left alone to sleep.

Brownell maintains Roth had good reason to second guess the doctor's diagnosis, because he knew that Brownell had received a cursory examination at the hospital, which did not even include x-rays. But how much Roth knew about the scope of the doctor's examination is far from clear.[7] And even if Roth was fully apprised of the exact scope of the examination, it would be unrealistic to expect a layman—in all but extreme cases—to question whether a doctor had employed proper procedures in examining an accident victim. In *Salazar*, the fact that the plaintiff was examined by paramedics on a sidewalk at the accident scene lead us to conclude that the lockup officers had no reason to second guess medical professionals. In the present case, the defendants had even less reason to second guess the diagnosis—Brownell had been examined at a hospital, by a doctor, surely a more thorough examination than that conducted in *Salazar*.

To buttress his claim that Roth knew medical treatment was needed, Brownell points out the discrepancy between how the hospital personnel observed him (intoxicated, yet able to move) and how Roth saw him (dazed and motionless). Brownell surmises that Roth is telling a different story for good reason: to hide the fact—based on observing behavior changes from hospital to lockup—that he was on notice of Brownell's deteriorating medical condition. This assertion is too speculative. The disparity in how Roth and others characterized Brownell's behavior is not that glaring and some difference is not surprising, especially in the middle of the night. Moreover, Roth testified that he arrived at the hospital after Brownell was already being examined and that he did not pay close attention to Brownell's behavior there.

In effect, Brownell argues that the due process clause requires police to second guess a doctor's diagnosis in all instances where intoxicated accident victims display aberrant behavior. Such a requirement is not mandated by the Constitution. This is not to say police officers are relieved from seeking additional medical care for detainees whenever treatment was initially provided. Obviously there are situations in which a detainee, after initially receiving medical aid, suffers complications requiring additional medical treatment. Here, the officers' failure to seek additional treatment based on Brownell's lethargic behav-

---

**6.** As previously noted, over twelve hours after the accident, Brownell's blood alcohol content was .14%, well above Indiana's legal limit of .10 percent. *See* Ind.Code § 9–11–2–1(a). According to the uncontested testimony of a toxicologist, Brownell's blood alcohol content at the time of the accident was between .25 and .47 percent. Supp.App. at 82.

**7.** We note that Dr. Bolander testified it was a thorough examination.

ior, while unfortunate, does not rise to the level of deliberate indifference. They provided immediate medical attention after Brownell's accident, they acted reasonably in trying to get Brownell to cooperate at the lockup, and they monitored Brownell's condition in his cell. When it was apparent Brownell had not moved, a lockup officer immediately sought medical help. Under the circumstances, we find no evidence that the defendants acted with deliberate indifference in failing to provide additional medical treatment to Brownell. Accordingly, we affirm the district court's grant of summary judgment on the medical care claim.

## IV.

■■■ Brownell also alleges that, in the course of his arrest, Roth, Bickel, and Bird employed excessive force in violation of the fourth amendment prohibition against unreasonable searches and seizures.[8] All claims that law enforcement officers have used excessive force in the course of an arrest are analyzed under the fourth amendment and its reasonableness standard (rather than under a substantive due process approach). *Graham*, 490 U.S. at 395, 109 S.Ct. at 1871. Under the fourth amendment, the question is whether the officers' actions were "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. *Id.* at 397, 109 S.Ct. at 1872. Reasonableness in this context is judged from the perspective of a reasonable officer on the scene, rather than with the "20/20 vision of hindsight." *Id.* at 396, 109 S.Ct. at 1872. How much force may reasonably be exerted depends on three factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight. *Id.*

Applying these principles to this case, Brownell maintains that the force employed by Roth, Bickel, and Bird was objectively unreasonable: he posed no safety threat, did not resist arrest, and did not attempt to flee, yet the officers used excessive force anyway. Examining the record, the district judge found "no evidence whatsoever" to suggest that the defendants' very limited use of force during Brownell's arrest was objectively unreasonable. We agree.

Relying on logic akin to the doctrine of *res ipsa loquitur*, Brownell maintains that the fact he left the hospital able to move and returned a quadriplegic, all the while in the exclusive control of Roth, Bickel, and Bird, raises an inference that they caused his extraordinary injury. Strengthening this inference, argues Brownell, is the fact that Dr. Bolander found no misalignment of his spine and testified that, had it been fractured, he could not possibly have missed it. Moreover, several witnesses testified that they observed Brownell moving at the hospital despite Roth's testimony that Brownell was almost motionless at that point in time. A reasonable inference from all this, Brownell asserts, is that the officers at the lockup employed excessive force, the precise nature of which has yet fully to come to light.

■■ While we must review the record in the light most favorable to the nonmovant,

---

**8.** For fourth amendment purposes, a "seizure" begins when government officials restrain the liberty of a citizen by means of force or show of authority. *See Terry v. Ohio*, 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, n. 16, 20 L.Ed.2d 889 (1968). In *Graham v. Connor*, 490 U.S. 386, 395 n. 10, 109 S.Ct. 1865, 1871 n. 10, 104 L.Ed.2d 443 (1989), the Supreme Court expressly left open the question whether the fourth amendment continues to provide individuals with protection against deliberate use of excessive force beyond the point at which arrest ends and pretrial detention begins.

We need not resolve this question here. The trial court concluded the alleged excessive force (i.e., the pain techniques) was applied in the course of Brownell's arrest, prior to detention, and we agree. *See, e.g., Titran v. Ackman*, 893 F.2d 145, 147 (7th Cir.1990); *Wilkins v. May*, 872 F.2d 190, 192–95 (7th Cir.1989), *cert. denied*, 493 U.S. 1026, 110 S.Ct. 733, 107 L.Ed.2d 752 (1990); *Lester v. City of Chicago*, 830 F.2d 706, 713 n. 7 (7th Cir.1987).

a party who bears the burden of proof on a particular issue may not rest on its pleading, but must set forth specific facts showing that there is a genuine issue of material fact which requires a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Patrick v. Jasper County*, 901 F.2d 561, 565 (7th Cir.1990). To do so, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). Thus, in the absence of any evidence of specific wrongdoing, Brownell's excessive force claim is speculative and fails to raise any material issue of fact for trial.

Brownell's only evidence of excessive force is the defendants' use of two pain techniques on him. In particular, he notes that the mandibular angle pressure hold could easily have supplied the force necessary to *aggravate* his spinal injury. (No suggestion is made that this technique alone could have supplied the force necessary to actually fracture his spine.) Further, in subsequent police reports, Bickel and Bird failed to refer to some of the pressure techniques they employed, raising, contends Brownell, an issue of credibility and the specter of a coverup. But the question is not whether, as a matter of fact, these techniques may have aggravated Brownell's (undiscovered) spinal injury, but whether the use of these techniques was objectively reasonable under the circumstances. Faced with an apparently intoxicated driver, the officers had a duty to determine Brownell's blood-alcohol content. Perceiving uncooperative behavior in administering a Breathalyzer test, the defendants, acting with knowledge of the doctor's diagnosis, attempted to rouse Brownell from his apparent stupor. As the district judge observed, the pain techniques involved little force. And, upon discovering they were ineffective, the officers did not resort to a higher degree of force but

merely attempted to process Brownell as best they could under the circumstances. Moreover, although not dispositive, no evidence was presented that Brownell returned to the hospital with bruises or other signs of excessive force. Brownell's injury is unfortunate and regrettable; however, absent any evidence it was caused by the unreasonable conduct of these state actors, rather than his automobile accident, no constitutional deprivation occurred. Lacking a genuine issue of material fact on the excessive force claim, the district court properly granted summary judgment.

## V.

Finally, Brownell argues the district court erred in granting defendants' motion for summary judgment on the pendent state negligence claims. Specifically, Brownell alleges that Roth, McAllister, Schulz, and Adams Township (as their employer), negligently failed to tell Dr. Bolander about the severity of the accident and about a crack on the windshield known as a "starburst." With this information, Brownell contends, the doctor would have examined him more carefully and ordered x-rays. The district court found as a matter of law that the defendants' failure to notify hospital personnel of the cracked windshield was not the proximate cause of Brownell's injury and they were therefore not liable for negligence. Alternatively, the court ruled that Brownell's act of driving while intoxicated constituted contributory negligence which proximately caused or contributed to his subsequent injuries, thus barring any claim against the defendants. We agree with both of the grounds asserted by the district court.

 Under Indiana law, a plaintiff guilty of contributory negligence, however slight, is completely foreclosed from recovery against public employees.[9] *Koroniotis v. La Porte Transit, Inc.*, 397 N.E.2d 656, 660 (Ind.Ct.App.1979); *Huey v. Milligan*, 242 Ind. 93, 175 N.E.2d 698, 700 (1961).

---

**9.** Since defendants are public employees, the Indiana Comparative Fault Act is inapplicable to this case. *See Governmental Interinsurance*

*Exchange v. Khayyata*, 526 N.E.2d 745 (Ind.Ct. App.1988).

Indiana courts find contributory negligence if (1) the plaintiff's conduct falls below the standard to which an ordinary person would conform for his or her own protection, and (2) the plaintiff's imprudent conduct is a direct cause of the injuries. *Berg v. Glinos,* 538 N.E.2d 979, 981 (Ind.Ct.App. 1989); *Public Service Co. v. Gibbs,* 460 N.E.2d 992, 995 (Ind.Ct.App.1982); *McCall v. Sisson,* 166 Ind.App. 403, 336 N.E.2d 660, 662 (1975).

Although ordinarily a question of fact for the jury, contributory negligence is an issue of law when the voluntary conduct of the plaintiff exposes him to "imminent and obvious dangers which a reasonable man exercising due care for his own safety would have avoided." *Jones v. Gleim,* 468 N.E.2d 205, 207 (Ind.1984); *see also City of Alexandria v. Allen,* 552 N.E.2d 488, 496 (Ind.Ct.App.1990). As a matter of law in Indiana, a person who drives while intoxicated is guilty of wanton and willful misconduct. *Williams v. Crist,* 484 N.E.2d 576, 578 (Ind.1985). In the present case, it is uncontroverted that Brownell operated a motor vehicle while intoxicated—as previously noted, his blood alcohol content at the time of the accident was between .25 and .47 percent. Consequently, the district court properly concluded that Brownell engaged in wanton and willful misconduct and was contributorily negligent as a matter of law.

■ In response, Brownell contends his contributory negligence does not bar his claim because the defendants had the last clear chance to prevent his injuries. Under the last clear chance doctrine, a plaintiff's contributory negligence is excused whenever the defendant had a later occasion to avert the calamity and negligently failed to take advantage of that opportunity. *Indianapolis Traction and Terminal Co. v. Croly,* 54 Ind.App. 566, 96 N.E. 973 (1913). In order for this rule to apply, the defendant's negligence must have intervened after the plaintiff's negligence ceased. However, an exception to this timing requirement applies if the defendant has actual knowledge of the plaintiff's peril. *Id.* In the face of actual knowledge (regardless of whether the defendant's negligence is before or after the plaintiff's negligence), a special duty arises, requiring the defendant to use every reasonable means to avoid injuring the plaintiff. *Id.*

■ In the case at bar, the district court properly concluded that the last clear chance doctrine was unavailable to Brownell. Brownell's negligence—including his uncooperative behavior and his inability to communicate with his rescuers—continued throughout the time the defendants attempted to render aid to him. Moreover, the defendants did not have actual knowledge of Brownell's imminent peril (his damaged spine), taking this case out of the "actual knowledge" exception.

■ As a second ground for summary judgment, the district court concluded that Brownell's drunken driving was the proximate cause of any subsequent injuries resulting from the treatment provided by McAllister and Schulz. Under Indiana law, "a negligent act or omission is the proximate cause of an injury if the injury is a natural and probable consequence which, in light of the circumstances, should reasonably have been foreseen or anticipated." *Havert v. Caldwell,* 452 N.E.2d 154, 158 (Ind.1983) (quoting *Bridges v. Kentucky Stone Co., Inc.,* 425 N.E.2d 125, 127 (Ind. 1981)). If a plaintiff's misconduct is reasonably foreseeable, intervening acts of third parties will not break the chain of causation. *FMC Corp. v. Brown,* 526 N.E.2d 719, 727 (Ind.Ct.App.1988); *Miller v. Faulkner,* 506 N.E.2d 52, 55 (Ind.Ct. App.1987). Moreover, an original tortfeasor is liable for subsequent injuries arising from medical treatment required as a result of the original misconduct. *Whitaker v. Kruse,* 495 N.E.2d 223, 225–26 (Ind. Ct.App.1986). Here, Brownell's voluntary intoxication was the proximate cause of his ultimate injury. Moreover, as the original tortfeasor, he is liable for subsequent injuries arising from medical treatment required as a result of his original misconduct.

Brownell also contends that genuine issues exist as to whether Roth, Bickel, and Bird negligently denied him appropriate

medical care or negligently employed excessive force against him. Further, Brownell maintains Sheriff Figel, Adams Township, and Barry Gerig, as trustee for Adams Township, were liable under common law principles of respondeat superior. Brownell claims that all of these defendants negligently handled him and negligently denied him medical care.

As in our discussion of the negligence claims against McAllister and Schulz, here too, it is clear, that Brownell's drunken driving set in motion a chain of events, all of which were reasonably foreseeable, leading to his injury. Because the acts of Figel, Gerig, Roth, Bird, and Bickel did not proximately cause Brownell's injuries, the district court properly granted defendants' motion for summary judgment. Accordingly, we need not analyze the immunity defense raised by the defendants under the Indiana Tort Claims Act.

### VI.

For all of the foregoing reasons, the judgment of the district court is

AFFIRMED.