Linda GLOVER, Plaintiff,

v.

The DREXEL NATIONAL BANK, Defendant.

No. 91 C 3149.

United States District Court, N.D. Illinois, E.D.

Aug. 24, 1992.

David A. McGuire, Michael L. Siegel, Carlo E. Poli, Stone, McGuire & Benjamin, Chicago, Ill., for plaintiff.

Linda D. Glover, pro se.

Robert Howard Brown, James J. Convery, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, Ill., for defendant.

## ORDER

NORGLE, District Judge.

Before the court are defendant Drexel National Bank's ("Drexel") motion for summary judgment and plaintiff Linda Glover's ("Glover") motion for a continuance. For reasons that follow, Drexel's motion is granted and Glover's motion is denied.

## FACTS

Glover, acting *pro se*, filed her original complaint on May 21, 1991 and an amended complaint on February 28, 1992.[1] Both complaints alleged that her former employer, Drexel, discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII").

Glover, a black, began working for Drexel as a teller in May 1980. On February 3, 1981, she fell off a chair at the bank and broke a kneecap. Following surgery and an extended medical leave, Glover returned to work on June 22, 1981. She spent one day doing clerical work before returning to her teller position. In August 1981, however, Glover began having severe knee problems and stopped working. She underwent knee surgery again in mid-September 1981.

Without prior notice, Glover returned to the bank on June 21, 1982 and asked to return to work. She informed the bank that she remained under doctor's orders not to walk more than five or ten minutes at a time, to limit her stair climbing and standing, and not to bend or kneel. Glover believes that Drexel's personnel director, Dan Kratchowill, told her that she was physically unable to work as a teller. Kratchowill, however, believes Glover told him she could not resume her former teller's position. Nonetheless, Kratchowill asked roughly eight department heads at the bank if they had a permanent, non-teller job available for Glover. No such position was found. Glover spent the day arranging and filing checks, a job normally done by another full-time employee. After Kratchowill's unsuccessful inquiries were complete, he terminated Glover that day.

Glover, in her handwritten amended complaint, alleged that the bank refused to make reasonable accommodations for her physical condition, even though non-black employees allegedly received such accommodations in similar circumstances. Among Glover's other claims is the allegation that she was rebuffed in requests to fill her former teller position or the mail deposit teller position, and that the mail deposit teller job was filled shortly after her termination by Eleanor Riggle, the white daughter of a Drexel executive officer.

The bank does not have a "mail deposit teller" position. Mail deposits are handled by the regular tellers, with each teller spending between 30 and 90 minutes a day on such deposits during periods when they have no customers to wait on. Occasionally at the beginning of a month, however, one or two tellers would be assigned to handle mail deposits for a few full days.

Eleanor Riggle, a Drexel employee since 1958, never worked as a mail deposit teller and was not the daughter of a bank officer. Jacquiline Wimberly, daughter of the bank's vice president and cashier, was hired three months after Glover's termination. Her position involved inputting information into a new computer system and balancing accounts. As part of her job, Wimberly walked throughout the bank at least twice daily to pick up outgoing mail and credits from tellers. Each walk-through took roughly a half hour to complete and involved going up and down stairways.

The community from which Drexel draws most its customers is over 90% black. In 1982, of Drexel's 139 employees, 78% were black, 3% other minority, and 19% white. The office and clerical group,

---

**1.** The facts set forth herein are drawn from Drexel's statement of undisputed material facts and supporting materials filed pursuant to Local Rule 12(m), and from the court docket sheet. Glover failed to file a statement pursuant to Local Rule 12(n) disputing Drexel's 12(m) statement, and therefore Drexel's entire statement is deemed admitted by Glover. *Maksym v. Loesch,* 937 F.2d 1237, 1240–41 (7th Cir.1991).

which included tellers, was 90% black, 3% other minority, and 7% white. There were 23 terminations from that group in 1982, of which 18, or 79%, were of blacks. During the two years following Glover's termination, the bank hired 23 tellers, including 19 blacks, three whites and one Asian. After Glover's termination, the first eight tellers hired were black. Beginning in 1981, Drexel began a program to reduce the number of employees to approximately 120.

This court appointed counsel for Glover on June 6, 1991 and two additional counsel later entered their appearances on Glover's behalf. On December 12, 1991, while a motion to dismiss the original complaint was pending, the court gave Glover's counsel 14 days to file an amended complaint if he could do so in good faith. No amended complaint was filed within that period, and Drexel's dismissal motion was granted on January 6, 1992. In the same order, however, Glover was given 28 days to file an amended complaint signed by at least one of her attorneys. She was also warned that unless such an amended complaint were filed, the earlier dismissal would be with prejudice. Glover's attorneys then sought, and were allowed, to withdraw on January 17, 1992.

Glover successfully sought a continuance, which was granted on January 24, 1992, giving her until February 28, 1992 to file an amended complaint. She filed her amended complaint on the final day allowed. After Glover failed to appear for a status hearing on March 18, 1992, the case was dismissed for want of prosecution on Drexel's motion. The dismissal, however, was vacated on Glover's motion on March 3, 1992.

Drexel then moved on May 8, 1992 to dismiss, to strike and for summary judgment on laches grounds. In denying that motion on June 15, 1992, the court admonished both parties to proceed with diligence.

Drexel's instant motion for summary judgment was filed on July 10, 1992. On the date Glover's response was due, July 31, 1992, she filed only her instant motion for a continuance, asserting that her involvement in other cases infringed on her time to respond.

## DISCUSSION

As recounted above, Glover has had ample opportunity throughout the litigation to present her case. Both parties have been warned to proceed diligently, yet Glover has failed to offer an adequate justification for her alleged inability to file a substantive response to Drexel's instant summary judgment motion within the time provided. Her motion for a continuance is therefore denied, and the court will address the merits of Drexel's motion.

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A dispute about a material fact is "genuine" if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A plaintiff cannot rest on mere allegations of a claim without any significant probative evidence in support. *Id.* "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Accordingly, the non-moving party must go beyond the pleadings, affidavits, depositions, answers to interrogatories and admissions on file to designate specific facts showing a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553. A "scintilla of evidence" is insufficient; the non-movant must offer evidence on which a jury could reasonably find for him. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Nevertheless, in deciding whether any genuine issues of material fact exist, the court must draw all reasonable inferences in the light most favorable to the non-movant. *Bank Leumi Le-Isra-*

*el, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir. 1991).

■ Glover is asserting a single race discrimination claim under Title VII. A *prima facie* Title VII case requires showings that the plaintiff is a member of a minority group, that she applied for an open position for which she was qualified, and that she was rejected for the position "under circumstances which give rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The elements of proof required will vary in different factual settings. *Id.* at 253 n. 6, 101 S.Ct. at 1094 n. 6 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973)). If the plaintiff meets her *prima facie* burden, the defendant must produce a "legitimate, nondiscriminatory reason" for failing to hire the plaintiff. *Id.* 450 U.S. at 253–54, 101 S.Ct. at 1093–94. Once the defendant has met this burden of production, any presumption of discrimination by the defendant disappears and the plaintiff must then be given an opportunity to show that the defendant's proffered justification is a mere pretext for discrimination. *Id.* at 255–56, 101 S.Ct. at 1094–95. The plaintiff retains the burden at all times of persuading the court that intentional illegal discrimination prevented her hiring. *Id.* at 256, 101 S.Ct. at 1095.

■ Glover claims that she applied for two positions: teller and mail deposit teller. The uncontroverted facts show that Glover was not rehired as a teller because of her physical condition; either she or the bank believed she was physically unable to handle teller work in June 1982. The first eight tellers hired after Glover's termination—or failure to be rehired—were all black. There is no evidence in the record showing, or which would allow an inference, of racial discrimination. Moreover, there was no mail deposit teller position at Drexel during the period in question. Glover cannot claim the bank discriminated against her by failing to hire her for a nonexistent job. Even if the court assumes

that Glover actually sought the computer-input/account-balancing position filled by Jacquiline Wimberly, it is clear on the present record that Glover was physically unable to perform that job in June 1982 because it required extensive walking and stair climbing.

Additionally, Glover claims that the bank refused to make accommodations for her that it had made for non-black employees with physical problems similar to hers. She has offered no evidence, however, of such discriminatory accommodations.

Drexel has therefore presented sufficient uncontradicted evidence to establish the lack of a *prima facie* Title VII violation in its termination or failure to rehire Glover in June 1982. Accordingly, Drexel is entitled to summary judgment.

CONCLUSION

For the reasons stated above, Glover's motion for a continuance is denied and Drexel's motion for summary judgment is granted.

IT IS SO ORDERED.