851 F.Supp. 1222 (1994)
Harvey RAMBO, Plaintiff,
v.
John DALEY and William McGinnis, Defendants.
No. 92 C 0780.
United States District Court, N.D. Illinois, Eastern Division.
May 10, 1994.
*1223 Ronald Kawanna, Jr., Lawrence Gulatta, Antonietti & Gulatta, Calumet City, IL, for plaintiff.
David Lincoln Ader, John F. Donahue, Ancel Gluck Diamond Cope & Bush, Chicago, IL, for defendants.

MEMORANDUM OPINION AND ORDER
ZAGEL, District Judge.
Shortly before ten o'clock on the night of 5 April 1991, Police Officer John Daley was patrolling near the intersection of Brainard and Burnham Avenues in the Village of Burnham, Illinois. At the intersection, he observed "an older model Chevy" coming toward him in the wrong traffic lane. Officer Daley gave chase with lights flashing and siren blaring. The Chevy refused to yield, swerving across lanes as it raced ahead. Roughly one-half to three-quarters of a mile from where the chase began, the Chevy crossed some railroad tracks and pulled into a liquor store parking lot  having travelled approximately one hundred feet past the Illinois border into Hammond, Indiana.
Officer Daley pulled into the lot, exited his car, approached the Chevy's driver, and asked to see his license. The driver, Harvey Rambo, told the officer that, having crossed the state line, he would comply only with directives from Hammond police officers. Burnham Police Officer William McGinnis subsequently arrived on the scene. Daley and McGinnis arrested Rambo, but Rambo refused to get into the Burnham squad car, stating that the officers had no right to interfere with him in Indiana. The officers handcuffed Rambo and, according to the amended complaint, forced him into the squad car by pushing and shoving him, pulling his hair, punching him in the ribs, and repeatedly striking him. Rambo claims that, having asked the officers to summon the Hammond *1224 police, he was neither attempting to flee nor resisting arrest and did nothing else to provoke the officers' use of force.
The officers drove Rambo back to Illinois, to the Burnham Police Department, where they charged him with driving under the influence of alcohol and resisting arrest. Rambo alleges that he repeatedly requested access to medical treatment for injuries sustained during his arrest and that Daley and McGinnis rejected these requests. As a result, he says that he was forced to suffer those injuries  which the amended complaint fails to identify  without medical care until released from custody and taken by his wife to the St. Margaret Hospital Emergency Room in Hammond. He arrived there at 12:02 a.m. on 6 April 1991, two hours after his arrest. At St. Margaret's, Rambo complained of numbness in his left hand and wrist, to which an ace bandage was applied. He was discharged at 1:20 a.m. He now claims that he suffered also from broken ribs.
In Count I of this complaint, Rambo claims that Daley and McGinnis, under color of state law, used excessive force against him and owe him damages under 42 U.S.C. § 1983. Count II is a pendant Illinois law claim for malicious prosecution. Count III is another § 1983 claim, this time for denial of medical care. The defendants seek dismissal under Rule 12(b)(6), and summary judgment under Rule 56(b) on the federal claims. Should they prevail, they ask this court also to relinquish jurisdiction over the pendant state law claim.
Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the non-moving party, the court concludes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FRCP 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248, 106 S.Ct. at 2510.
Defendants claim they were not acting under color of law when they allegedly used excessive force to arrest Rambo because they had no actual authority to arrest Rambo in Indiana.[1] Section 1983 creates liability only for persons acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ..."
Applying similar language to an excessive-force claim in Screws v. United States, the Supreme Court recognized that "under color of law" was not coextensive with actual authority:
It is clear that under `color' of law means under pretense of law. Thus acts of officers in the ambit of their personal pursuits are plainly excluded. Acts of officers who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it. If, as suggested, the statute was designed to embrace only action which the State in fact authorized, the words `under color of law' were hardly apt words to express the idea.

Screws v. United States, 325 U.S. 91, 111, 65 S.Ct. 1031, 1040, 89 L.Ed. 1495 (1944) (emphasis added). In Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)[2], the Supreme Court reaffirmed that Congress sought to "enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." Id. at 172, 81 S.Ct. at 476. And again, in Lugar v. Edmondson Oil Co., 457 U.S. 922, 929, 102 S.Ct. 2744, 2749-50, 73 L.Ed.2d 482 (1982), the Court held that an officer acts under color of law if he is clothed with the authority of the state, and is purporting to act under that authority, even if he misuses or abuses that authority.
On the other hand, Daley and McGinnis cite Gibson v. City of Chicago, 910 F.2d 1510, 1518 (7th Cir.1990), where the Court of Appeals held that an officer's actions were not under color of law because his department had effectively suspended him prior to those actions. The court emphasized language *1225 from Screws in which the Supreme Court acknowledged that it was not confronting the case of an officer completely stripped of authority. Id. at 1518-19.
In short, Daley and McGinnis argue that once they crossed into Indiana, they stood in the same position as the suspended officer in Gibson: they lacked all authority to act as police officers. Rambo counter-argues that Daley and McGinnis acted in their capacity as Burnham police officers when they arrested him, and therefore acted under color of state law, although they overstepped their authority. The arguments present an interesting issue of characterization.
Daley and McGinnis rely heavily on Firman v. Abreu, 691 F.Supp. 811, 813 (S.D.N.Y.1988). New York State Trooper Angel Abreu approached Martin Firman in his car at an exit on the Connecticut Turnpike. The trooper asked Firman for his driver's license and registration. Firman refused, informed the Trooper that he was beyond his jurisdiction, requested local police assistance, and then drove away. Abreu pursued and attempted to arrest Firman, who alleged the trooper assaulted him in the process. Firman was eventually apprehended and brought to a police station in Greenwich, Connecticut.
Judge Sprizzo found that Firman failed to establish that Abreu had acted under color of state law: "Although it is true that state officials can act under color of state law even if they overstep their authority, that rule can have no application where, as here, the official has no colorable authority to act in the jurisdiction in which he purports to act." 691 F.Supp. at 813 (citations omitted). Judge Sprizzo found that Abreu acted without actual or apparent authority because "all acts took place in Connecticut where Abreu had no authority to act" and "the plaintiff did not believe at the time of the acts in question that defendant Abreu was acting pursuant to state law." Id.
Some important distinctions make the color-of-law assertion much stronger in the present case. Abreu's encounter with Firman began and ended in Connecticut, outside Abreu's jurisdiction. The pursuit and apprehension of Rambo began and ended in Burnham Village, Illinois, at the heart of Daley's and McGinnis's jurisdiction. It seems quite clear, therefore, that Daley and McGinnis were acting as Burnham police officers; they pursued Rambo for an infraction committed in Burnham, and, having arrested him in Hammond, they brought him back across the state line for processing.
This case bears a closer resemblance to United States ex rel. v. Brzozowski, 281 F.Supp. 306 (E.D.Pa.1968). Brzozowski alleged that two men identifying themselves as police officers from Ridley Township, Pennsylvania apprehended him in Brooklyn, New York and forcibly transported him back to Ridley Township. Noting that the officers identified themselves as Ridley Township police officers and either displayed or alluded to a warrant, Judge Davis concluded that the officers "adequately demonstrated that they were pursuing an activity under color of state action." Id. at 311.
Moreover, unlike Firman or Brzozowski, the defendants here were in hot pursuit of Rambo when they crossed state lines. Illinois officers in hot pursuit do have some authority to chase suspects into Indiana and make arrests there:
Any member of a duly organized state, county or municipal peace unit of another state who enters this state in fresh pursuit, and continues within this state in such fresh pursuit of a person in order to arrest him on ground that he is believed to have committed a felony in the other state, shall have the same authority to arrest and hold such person in custody as any law enforcement officer of this state....
Indiana Code 35-33-3-1. Thus, Rambo's allegations present a stronger case than even Brzozowski for characterizing the defendants as officers who "misused" or "overstepped" their actual authority, rather than as the effective equivalents of suspended officers.[3]
*1226 Distinctions aside, Judge Sprizzo's approach, if not his precise result, seems hard to square with Screws, Monroe, and Lugar. He offers no reason why an active-duty police officer who makes an arrest using improper means  for example, excessive force  acts under color of state law, while an active-duty police officer who makes an arrest in an improper place  outside his jurisdiction  does not.[4] In both cases we have an officer who, possessing state-conferred authority, oversteps it in the course of performing a police function.
Gibson recognized that acts committed by an on-duty police officer are under color of law if they are in some way "related to the performance of police duties." Gibson, 910 F.2d at 1516. See also Murphy v. Chicago Transit Authority, 638 F.Supp. 464, 467-68 (N.D.Ill.1986) ("a person acts `under color of state law' when he engages in conduct that is related to state authority conferred on the person, even though that authority does not in fact permit the conduct"). The patent distinction between Gibson, on the one hand, and both Firman and this case, on the other, is that the City of Chicago ordered Gibson not to perform any police duties. At the moment he acted, Gibson completely lacked the power or authority to perform police duties anywhere; he represented no governmental entity. By contrast, in Firman and the present case, the defendants never lost their status as active-duty police officers within their jurisdictions. In both cases, the defendants undertook conduct related to performance of their police duties, although more clearly so in the present case than in Firman.
In order to reconcile Monroe with Gibson, courts must focus on an officer's status and possession of general authority to act as police officer and the nature of his actions, but not on his specific authority for particular actions. This is, essentially, the approach Judge Davis adopted in Brzozowski. See also United States v. Trunko, 189 F.Supp. 559, 562-63 (E.D.Ark.1960). The officers in that case had no authority to effect an arrest in New York State, but they did assert their authority as active-duty Ridley Township police officers, a status they actually held. Thus, reconciling Gibson with Monroe suggests the following rule: If you are an active-duty police officer, specially authorized by virtue of that status to carry a badge and a gun and to act like a police officer, then if you do act like a police officer you may well be acting under color of state law even if you lack actual authority for your specific actions, no matter how, why, or where you act. Given Monroe's discussion of "under color of law," there may be no principled distinction between kicking in a door without a warrant and making an arrest on the wrong side of a state boundary.
As for the plaintiff's awareness of the officers' lack of jurisdiction, a feature that this case and Firman share, it hardly seems relevant. Section 1983 creates a federal remedy for infringement of federal rights by states and their officers because "by reason of prejudice, passion, neglect, intolerance or otherwise, *1227 state laws might not be enforced and the claims of citizens to the enjoyment of rights, privileges, and immunities guaranteed by the Fourteenth Amendment might be denied by state agencies." Monroe, 365 U.S. at 180, 81 S.Ct. at 480. I see no reason to deny Rambo this remedy simply because he may have understood the limits of an Illinois police officer's jurisdiction better than Daley and McGinnis. Liability under § 1983 is not predicated on detrimental reliance.
The officers also raise a collateral estoppel defense based on Judge Szwed's finding during the criminal proceedings against Rambo that Daley and McGinnis lacked authority to arrest him and therefore acted as "private citizens." People v. Rambo, Dkt No 92 MC6-003031 (Cir Ct Cook Cty, 31 Mar 1993) (Preliminary Hearing). Given the foregoing analysis, the reason this argument fails is manifest. In the criminal context, Judge Szwed faced the question of actual authority. Here, the issue is whether Daley and McGinnis acted under color of state law, which they could have done absent actual authority to arrest Rambo in Indiana.
To more fully assess the officers' situation in the liquor store parking lot, it seems worth noting that Daley and McGinnis had no constitutional duty to prevent Rambo from re-entering his car in Hammond. In Reed v. Gardner, 986 F.2d 1122 (7th Cir.1993), Judge Flaum's majority opinion addressed a situation where a police officer might subject himself to § 1983 liability by not removing an intoxicated driver from an automobile. Reed alleged that police officers knowingly took into custody a sober driver, leaving the ignition keys and an obviously drunk passenger behind in the car. This passenger slid behind the wheel and, approximately two hours later, crossed the center line and collided head on with Reed. Taking all these allegations as true, Judge Flaum concluded that Reed had stated a claim against the officers under § 1983: "By removing a safe driver from the road and not taking steps to prevent a dangerous driver from taking the wheel, the defendants arguably changed a safe situation into a dangerous one." Id. at 1127. Because the officers' actions changed the status quo to the detriment of public safety, they were not shielded by DeShaney v. Winnebago County Dep't of Social Services, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989). See also Ross v. United States, 910 F.2d 1422, 1431 (7th Cir.1990) (distinguishing DeShaney where county alleged to have policy of "cutting off private sources of rescue without providing a meaningful alternative"). The officers here would not have changed the status quo by failing to arrest Rambo, nor would such an omission have constituted action under state law. See Triplett v. Azordegan, 570 F.2d 819, 823 (8th Cir.1978) (prosecutor outside his jurisdiction had no duty to come forward with exculpatory information at appellant's trial). Had Rambo proceeded to run down, say, several members of the Edmund Burke Society hitching their way to an Iron John retreat in the Indiana wilderness, Daley and McGinnis would have no § 1983 liability to the Burkeans.
However, the DeShaney limitation on constitutional liability fortunately does not define the limits of conscience for most police officers. Had Daley and McGinnis, believing Rambo thoroughly stewed, simply returned to Illinois, leaving the drivers and pedestrians of Indiana to fend for themselves, we might be justifiably disappointed, or even appalled. But like any citizens encountering such a situation, Daley and McGinnis were obliged to proceed in a lawful manner. Whether they did will now be a matter for trial.
As to Count III, the defendants contend they are entitled to summary judgment because they were not deliberately indifferent to Rambo's medical needs during Rambo's detainment after his arrest. Punishment prohibited by the due process clause of the fourteenth amendment includes deliberate indifference to the serious medical needs of pretrial detainees. Brownell v. Figel, 950 F.2d 1285, 1289 (7th Cir.1991); Salazar v. City of Chicago, 940 F.2d 233, 237-242 (7th Cir.1991). "Deliberate indifference" is a synonym for reckless or intentional conduct; that is, "conduct that is so dangerous that the defendant's knowledge of risk can be inferred." Brownell, 950 F.2d at 1290. Turning first to an apparent procedural blunder, Rambo has failed to file the statement required by Local Rule 12(n). The rule provides *1228 that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the moving party." The Seventh Circuit has repeatedly upheld strict application of Rule 12(n). See, for example, Brown v. United States, 976 F.2d 1104, 1108 (7th Cir.1992); Schulz v. Serfilco, Ltd., 965 F.2d 516, 519 (7th Cir.1992). Even putting this failure aside, Rambo still has the burden to produce evidence establishing each element of his case. Greater Rockford Energy and Technology Corp. v. Shell Oil Co., 998 F.2d 391 (7th Cir.1993). He may not merely stand on his pleadings, but must allege specific facts which demonstrate that a genuine issue of triable fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).
Rambo submits no sworn affidavits or deposition testimony. His only evidence is a bill indicating that four days after his release from the emergency room at St. Margaret's, diagnostic treatment at the Whiting Clinic indicated that he had fractured ribs. But while this document suggests that Daley and McGinnis may have fractured Rambo's ribs during the arrest, it provides no reason to believe they had any way of knowing this, and neither does Rambo's unsworn allegation that he repeatedly requested medical assistance after the arrest. Rambo never even alleges that he complained of a specific injury.
In fact, by failing to contradict the defendants' 12(m) statement, Rambo effectively admits that St. Margaret's released him after treating his wrist only. The evidence therefore suggests, without contradiction, that if Rambo suffered rib fractures during the arrest, these injuries went undetected by emergency room personnel at St. Margaret's, and were in fact so subtle that Rambo did not seek further treatment for several days. In sum, Rambo presents no evidence that Daley and McGinnis had reason to suspect that he might be seriously injured, or that his injuries were in any way exacerbated by the delay in gaining treatment.
As to Count I, the defendants' motion to dismiss and motion for summary judgment are denied. The motion for summary judgment is granted as to Count III; the motion to dismiss Count III is, therefore, denied as moot. Since Count I survives, the court retains supplemental jurisdiction over the common law claim for malicious prosecution in Count II.
NOTES
[1] In their summary judgment motion, Daley and McGinnis essentially repeat the arguments regarding Count I in their motion to dismiss.
[2] Monnell v. Dep't of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), overruled Monroe on other grounds.
[3] Daley and McGinnis disagree because the officers in Brzozowski presented a warrant when they made their arrest. "Because it is solely a police function to serve and execute warrants, a function that cannot be performed by ordinary citizens, the Brzozowski case has little relevance to the citizen's arrest undertaken by the defendants in the case at bar." Although in one sense Daley and McGinnis also did something a private citizen could not do  they used an official squad car to apprehend Rambo and transport him back to Illinois  that is not really the right question. When an officer makes an arrest within his jurisdiction, he acts as a representative of the state, even though a private citizen might have made the same arrest. The distinction between the officer and the citizen making an arrest is not what each does, but whether each acts as a holder of governmental authority. Since the private citizen has no such authority, the citizen cannot abuse it. The officer can.
[4] The authorities cited in Firman do not provide the missing analysis. Triplett v. Azordegan, 570 F.2d 819, 823 (8th Cir.1978), concerned a prosecutor outside his jurisdiction who failed to act to protect the applicant's rights. Askew v. Bloemaker, 548 F.2d 673, 677 (7th Cir.1976), found that a state officer had no § 1983 liability for actions taken while acting as a federal officer. The court did say that "the actions of this `dual-status' agent were necessarily taken pursuant to federal authority, for he could not have acted under color of state law ... in Collinsville Illinois, as it was outside his jurisdiction as a St. Louis police officer." But the issue before the court was whether the officer acted under color of state or federal law, not whether he acted under color of law or as a private citizen. The court had much evidence before it suggesting that federal authorities controlled the officer when he engaged in the conduct complained of. It therefore did not have to, and did not, undertake an analysis of the question before this court. Chicago's Last Dep't Store v. Indiana Alcoholic Beverage Comm'n, 161 F.Supp. 1, 4-5 (N.D.Ind.1958), cited by Firman and Askew, predates Monroe and makes no attempt to reconcile its holding with Screws. Wallace v. Chrysler Credit Corp., 743 F.Supp. 1228, 1235 n. 11 (W.D.Va.1990), simply follows the conclusory holding in Firman without further analysis.